467 So.2d 29 (1985)
Rhea Deroche LIRETTE, Individually, etc.
v.
UNION TEXAS PETROLEUM CORPORATION, et al.
No. 84 CA 0113.
Court of Appeal of Louisiana, First Circuit.
February 28, 1985.
Rehearing Denied April 12, 1985.
*31 Robert M. Contois, Jr., New Orleans, for appellant-third party defendant, Antill Pipeline Constr. Co. and Liberty Mut. Ins. Co.
S. Gene Fendler, New Orleans, for third party plaintiff, Union Texas Petroleum Corp., Harvey Guthrey and Travelers Ins. Co.
Ken Charbonnet, Metairie, for Intervenor, Liberty Mut. Ins. Co.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
SHORTESS, Judge.
On February 6, 1981, there was an explosion at the Union Texas Petroleum Corporation's tank battery at its Orange Grove field in Terrebonne Parish, Louisiana. This explosion took the lives of four employees of Antill Pipeline Construction Company, Barry J. Lirette, Murphy Pitre, Allen Bourgeois, and Danny Ledet. Four lawsuits were brought and consolidated by proper parties for the wrongful death of these employees. Cited as defendants in each suit were Union Texas Petroleum Corporation (U-Tex), Harvey Guthrey, a U-Tex supervisor in charge of the work being done, and The Travelers Insurance Company (Travelers), U-Tex's liability insurer. These defendants filed third party petitions against Antill Pipeline Construction Company (Antill) and its insurer, Liberty Mutual Insurance Company (Liberty), seeking indemnity based on a written contract which had been entered into between U-Tex and Antill in November of 1978.
Antill's workers' compensation carrier intervened and sought recovery for the amounts paid to the survivors.
Prior to trial U-Tex settled the claims of the survivors in the four suits, but Antill and Liberty did not participate. Liberty did pay a total of $60,000.00[1] to the survivors to settle any potential Jones Act claims. The amounts paid by U-Tex and Liberty Mutual as well as the reasonableness of those amounts were stipulated by all parties. The settlements were:

Bourgeois survivors $425,000.00
Ledet survivors $125,000.00
Lirette survivors $110,000.00
Pitre survivors $375,000.00

Liberty paid workers' compensation as follows:

Bourgeois survivors $ 8,642.38
Ledet survivors 41,025.00
Lirette survivors 23,050.00
Pitre survivors 15,330.65

The third party claim of U-Tex and Travelers against Antill and Liberty Mutual was tried.[2] After trial, the trial judge, with written reasons, decided in favor of third party plaintiffs and against third party defendants; in favor of Liberty's workers' compensation intervention and against third party defendants' claims for the Jones Act settlements. From that judgment, Antill and Liberty have appealed.
Appellants' specifications of errors are enumerated as follows:
I.
The trial court erred, as a matter of law, in failing to apply the provisions of the Louisiana Anti-Indemnity Statute, La.R.S. 9:2780 to invalidate the indemnity provisions of the contract under which Union Texas Petroleum Corporation, Harvey Guthrey, and The Travelers Insurance Company claimed indemnity. Alternatively,
II.
The trial court erred under Texas law, as a matter of fact and law, in awarding *32 contractual indemnity to the third-party plaintiffs as the accident did not "arise out of" or "in connection with" the performance of the work under the contract and was caused by the third-party plaintiffs' sole negligence. Alternatively,
III.
The trial court erred, as a matter of law, in failing to limit Antill's indemnity liability to no more than $100,000.00 per person or $400,000.00 total.
IV.
The trial court erred, as a matter of fact and law, in failing to allow Liberty Mutual and Antill to recover (or at least get credit for) the amounts paid by them to settle the potential Jones Act exposure.

I.
U-Tex' claim for indemnity is based upon its contract with Antill, entered into in November of 1978. The indemnity provision found in paragraph 5 provides in pertinent part as follows:
Contractor hereby indemnifies and agrees to protect, hold and save Union Texas and its joint operators, if any, in the lease or facility operated by Union Texas on their behalf, harmless from and against all claims, demands and causes of action of every kind and character, including the cost of defense thereof arising in favor of any person, firm or organization, including but not limited to injuries to employees of Contractor, its agents, representatives, or subcontractors, on account of, arising from or resulting, directly or indirectly, from the work and/or services performed by Contractor hereunder, whether on, off, or near the premises, or by conditions created thereby, and whether the same is caused or contributed to by the negligence of Union Texas, its agent or employees.
Paragraph 10 of the agreement provides that the contract is to be governed by the laws of the state of Texas. The trial court in its written reasons addressed appellants' contention that the provisions of the Louisiana anti-indemnity statute, LSA-R.S. 9:2780, were applicable to invalidate the indemnity provisions of the contract. Said reasons address the issue squarely, are well considered, and we adopt same as our own. They provide in pertinent part as follows:
"Parties are free to contract as to the law applicable to their agreements, and such stipulations will be given effect in the courts of another state unless there are legal or strong public policy considerations justifying the refusal to honor the contract as written." ADR v. Graves, 374 So.2d 699 (La.App. 1st Cir.1979). Davis v. Humble Oil & Refining Company, 283 So.2d 783, (La.App. 1st Cir.1973).
Therefore, the laws of the State of Texas must be applied to this contract unless there are legal or strong public policy considerations to the contrary.
The contract was entered into in November, 1978. The accident occurred in February, 1981. In the summer of 1981, the Louisiana Legislature enacted LSA-R.S. 9:2780 which became effective on September 11, 1981. Subsection A of LSA-R.S. 9:2780 declared indemnity provisions such as the one at issue here to be null and void and against the public policy of the State of Louisiana. This represented a change in the law of Louisiana, as the jurisprudence had previously enforced such agreements.
Therefore, at the time the agreement was entered into, as well as the date of the accident, the agreement was valid and enforceable under Louisiana law and the parties were free to contract for the application of Texas law. However, such agreements are presently against the public policy of the State of Louisiana and any provision that the agreement is to be governed by the laws of another state is void and unenforceable.
Therefore, the Court must determine if LSA-R.S. 9:2780 is to be applied retroactively.
*33 Substantive laws, which are neither procedural nor remedial, are not to be applied retroactively unless the statute specifically provides for retroactive application. La.C.C. Article 8, LSA-R.S. 1:2. If the language used by the legislature does not clearly show intent that a statute should have retroactive effect, the statute must be construed to operate prospectively only. Long v. Northeast Soil Conservation District of Louisiana, 226 La. 824, 77 So.2d 408 (1954).
LSA-R.S. 9:2780 is a substantive law and not merely remedial or procedural. Accordingly, the statute is to be given prospective application unless specific provisions for retroactive application have been included in the statute.
In Tobin v. Gulf Oil Corporation, 535 F.Supp. 116, (E.D.La.1982), the court found that LSA-R.S. 9:2780 makes no specific provision for retroactive effect. The Court said,
`Mr. Tobin's injury, his initial suit against Gulf, and Gulf's claim against S.E.E. all predate the effective date of LRS 9:2780. S.E.E. would therefore have us rule that the statute is to be applied retroactively to void indemnity contracts applicable to accidents occurring prior to the effective date of the act. The law is to the contrary. While the statute may be constitutional and apply to contracts executed prior to the effective date and existing after it with respect to accidents occurring after September 11, 1981, we hold that it is not applicable to accidents or injuries such as Mr. Tobin's which occurred prior to that date.'
Antill and Liberty Mutual allege that the Court in Tobin did not consider section I of LSA-R.S. 9:2780. They claim that this section contains a retroactive provision.
Section I provides as follows:
`I. This act shall apply to certain provisions contained in, collateral to or affecting agreements in connection with the activities listed in Subsection C which are designed to provide indemnity to the indemnities for all work performed between the indemnitor and the indemnities in the future. This specifically includes what is commonly referred to in the oil industry as master or general service agreements or blanket contracts in whatever form and by whatever name. The provisions of this Act shall not apply to a contract providing indemnity to the indemnitiee when such contract was executed before the effective date of this Act and which contract governs a specific terminable performance of a specific job or activity listed in Subsection C.'
This is not a provision for retroactive effect. This provision merely makes this statute applicable to the continuation of a pre-existing contract. A statute is not retroactive merely because it is applied to the continuation of a pre-existing contract. Louisiana Insurance Guaranty Association v. Guglielmo, 276 So.2d 720 (La.App. 1st Cir.1973).
For these reasons the Court is of the opinion that LSA-R.S. 9:2780 has no retroactive effect and the indemnity agreement between the parties is governed by the laws of the State of Texas.

II.
Appellants argue that the accident did not "arise out of" or "in connection with" the performance of the work under the contract and was caused by the third-party plaintiffs' sole negligence, so the trial court erred under Texas law, in awarding contractual indemnity to third party plaintiffs.
The trial court found it unnecessary to make a finding as to fault.[3]
*34 Texas follows the general rule that an indemnity agreement will not protect the indemnitee against the consequences of his own negligence unless the obligation is expressed in unequivocal terms. Goodyear Tire & Rubber Co. v. Jefferson Const. Co., 565 S.W.2d 916 (Tex.1978); Joe Adams & Son v. McCann Construction Company, 475 S.W.2d 721 (Tex.1971). Our examination of the Texas cases convinces us that the trial judge was not clearly wrong in declining to rule on Antill's fault. The provisions in paragraph 5 are quite similar to the provisions found in the disputed contract in the Goodyear case, which the Supreme Court of Texas ruled were clearly expressed and sufficient to permit indemnification.

III.
Appellants argue that Antill's indemnity liability was limited by Texas law to no more than $100,000.00 per person or $400,000.00 total. 42 Tex.Stat.Ann. 2212b. Paragraph 6 of the contract provides in pertinent part as follows:
Contractor agrees to carry and maintain at all times during the term of this Agreement the following insurance with companies satisfactory to Union Texas:
. . . . .
(2) Contractual liability insurance specifically covering the indemnity agreement contained in this contract with limits of not less than $100,000.00 each person and $500,000.00 each accident for bodily injury liability and $100,000.00 for property damage liability....
In disposing of this contention the trial judge found that the parties agreed that Antill would provide insurance of not less than $100,000.00 each person and $500,000.00 each accident for bodily injury liability. Antill obtained insurance for substantially more coverage than the minimum required under the contract. The trial judge found the provision in the contract to be a minimal requirement and that U-Tex was entitled to indemnity up to the amount of insurance actually obtained. We agree. This finding was not manifestly erroneous.
Appellants further contend that Texas law places an absolute $300,000.00 limit per claim on indemnity agreements. Again, we agree with the trial judge's resolution of this contention. He found that the statute merely forbade U-Tex from requiring more than $300,000.00 per claim in insurance from Antill. It did not prohibit Antill from voluntarily providing more insurance. This finding was not clearly erroneous.

IV.
Appellants argue that the trial judge erred in failing to give appellants credit for the amounts paid by them to settle the potential Jones Act exposure of the parties. Liberty Mutual has conceded in brief that this claim would fall if the court did not hold that the indemnity provision in the contract between U-Tex and Antill was void and unenforceable. We have found the indemnity provision valid, so this assignment of error must fall.

V.
Third party plaintiffs have answered the appeal and call our attention to the fact that the indemnity agreement also "includes the cost of defense." For some reason, the trial judge neglected to rule upon this claim.
Paragraph 5 specifically provides for recovery of costs of defense. Where a contract contains a hold harmless or indemnity provision, the right to recovery of attorney fees is also recognized. Rodriquez v. Illinois Central Gulf Railroad, 395 So.2d 1369 (La.App. 1st Cir.1981). No evidence was taken in the trial court as to the costs of defense. Therefore, we must remand so the trial court can determine the narrow issue of the amount to be awarded to third party plaintiffs for costs of defense.
*35 Accordingly, for the reasons set forth hereinabove, the trial court's judgment is affirmed in all respects at appellants' costs. Further, this matter is remanded so testimony can be taken to determine third party plaintiffs' costs of defending this action.
AFFIRMED AND REMANDED.
NOTES
[1] $10,000.00 was paid to the Ledet survivors, $15,000.00 to the Pitre survivors, $25,000.00 to the Bourgeois survivors, and $10,000.00 to the Lirette survivors.
[2] The only issue tried was fault.
[3] We note that considerable evidence was taken for each side of the fault issue by the trial court in a day-long trial. The court felt that the language contained in paragraph 5 as quoted above was a clear and unequivocable provision whereby Antill agreed to indemnify U-Tex even in the event of U-Tex's own negligence and even if that negligence was the sole negligence involved in the accident. Armed with that finding, it was unnecessary for it to determine if Antill's employees were negligent because under the terms of the agreement, U-Tex would still be entitled to indemnification.