**Sidney PAGE, Plaintiff,**

v.

**GULF OIL CORPORATION, Defendant Third-Party Plaintiff-Appellant,**

v.

**BILCO TOOLS, INC., Third-Party Defendant-Appellee.**

No. 84–3869.

United States Court of Appeals, Fifth Circuit.

Nov. 5, 1985.

Gelpi, Sullivan, Carroll & Laborde, Gerard T. Gelpi, Randall C. Coleman, III, New Orleans, La., for defendant third-party plaintiff-appellant.

Lemle, Kelleher, Kohlmeyer & Matthews, Douglas P. Matthews, New Orleans, La., for third party defendant-appellee.

John J. Cooper, New Orleans, La., for Joy Mfg. Co.

Before CLARK, Chief Judge, BROWN, and GEE, Circuit Judges.

## OPINION

JOHN R. BROWN, Circuit Judge:

This case presents issues concerning the scope of the Louisiana Oil field Indemnity Act.[1] Specifically, we are asked to determine whether the indemnity provision in a blanket agreement between Bilco Tools, Inc. (Bilco) and Gulf Oil Corporation (Gulf) falls within the Act's coverage. We deter-

1. The Louisiana Oilfield Indemnity Act, La.Rev. Stat.Ann. § 9:2780, provides:

§ 2780. Certain indemnification agreements invalid

A. The legislature finds that an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in some agreements pertaining to wells for oil, gas, or water, or drilling for minerals which occur in a solid liquid, gaseous, or other state, to the extent those provisions apply to death or bodily injury to persons. It is the intent of the legislature by this Section to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.

B. Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.

C. The term "agreement" as it pertains to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gas-

eous, or other state, as used in this Section, means any agreement or understanding, written or oral, concerning any operations related to the exploration, development, production, or transportation of oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, including but not limited to drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, altering, plugging, or otherwise rendering services in or in connection with any well drilled for the purpose of producing or excavating, constructing improving, or otherwise rendering services in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral, or an agreement to perform any portion of any such work or services or any act collateral thereto, including the furnishing or rental of equipment, incidental transportation, and other goods and services furnished in connection with any such service or operation.

. . . .

I. This Act shall apply to certain provisions contained in, collateral to or affecting agreements in connection with the activities listed in Subsection C which are designed to provide indemnity to the indemnitee for all work performed between the indemnitor and the indemnitee in the future. This specifically includes what is commonly referred to in the oil industry as master or general service agreements or blanket contracts in whatever form and by whatever name. The provisions of this act shall not apply to a contract providing indemnity to the indemnitee when such contract was executed before the effective date of this Act and which contract governs a specific terminable performance of a specific job or activity listed in Subsection C.

mine that it does because the agreement was not executed before the effective date of the Act. La.Rev.Stat.Ann. § 9:2780(I) (West 1985). We therefore remand the case to the District Court for the determination of the other issues presented upon which the record is insufficient to meet the demands of Article III.

## HOW IT ALL HAPPENED

Sidney Page, an employee of Bilco Tools, Inc. (Bilco), was injured while working on a fixed offshore drilling platform that was owned by Gulf Oil Corporation (Gulf). Page sued Gulf and others seeking compensation for his injuries. Gulf impleaded Bilco as a third-party defendant seeking defense and indemnity against the costs it would incur in the course of contesting Page's suit. Bilco's obligation to indemnify Gulf arose from the terms of a blanket contract, sometimes referred to as a master service agreement, that had been executed between Gulf and Bilco.

Bilco moved for summary judgment against Gulf's claim for indemnity. The grounds stated were that the indemnity obligation relied upon by Gulf was void under the provisions of the Oilfield Indemnity Act. Gulf responded that its blanket agreement with Bilco had been executed prior to the effective date of the Act. Thus, it reasoned, the indemnity provision in the blanket agreement was valid notwithstanding the enactment of the Oilfield Indemnity Act.

 The District Court, without opinion, entered summary judgment in favor of Bilco. After finding that there was no just reason for delaying appeal, the Court below also executed a certificate of final judgment pursuant to F.R.Civ.P. 54(b), and this appeal followed.[2]

We believe that the contract entered into between Bilco and Gulf was executed after the effective date of the Oilfield Indemnity Act. We hold, therefore, that the Act governs the interpretation of the rights and liabilities arising between the parties to the contract. To the extent that that was the judgment of the Court below, the judgment is affirmed. The fact that the Act applies, however, is not dispositive of the case as a whole. There remains to be decided a seriously contended legal question which depends for its resolution upon a number of material issues of fact. These issues have been neither determined nor established without controversy. The grant of summary judgment in favor of Bilco was, therefore, improper and that portion of the decision below is reversed.

## AN ACCIDENT ON MARLIN RIG 10

Bilco Tools is an oilfield supplier—it provides tools, personnel, and equipment to companies who operate offshore drilling rigs off the coast of Louisiana. Bilco signed a "blanket contract" with Gulf, a large offshore operator, which set out the terms upon which Bilco might be called upon to supply equipment to Gulf's fixed platforms offshore. That "contract" was entered into on August 17, 1979 and provided that Bilco would

protect, indemnify and save Gulf harmless from and against all claims, demands, and causes of action, suits or other litigation (including defending all causes of action, suits or other litigation, or indemnifying and holding Gulf harmless from and against all costs, expenses, and attorney's fees incurred by Gulf in the defense of such causes of action, suits or other litigation brought against

**2.** Because the record is substantively inadequate to answer all of the questions raised we reiterate, yet again, that a 54(b) certificate is to be used *carefully* and *deliberately. Ryan v. Occidental Petroleum Corp.,* 577 F.2d 298, 302 (5th Cir.1978). A judgment may be "final" for the purposes of the rule and yet provide the appellate court with insufficient facts upon which adequately to resolve the issues presented for decision.

A 54(b) certificate should be reserved for a case where a delay in the appeal might result in prejudice to a party. The rule was adopted to avoid injustice, not to overturn the settled rule against piecemeal appeals. *Jasmin v. Dumas,* 726 F.2d 242, 244 (5th Cir.1984). A 54(b) certificate is not, therefore, to be granted routinely.

Its use here enables us to decide one critical, decisive issue, while leaving the other principal issue beyond the pale of Article III.

it on account of any obligation which [Bilco] is bound for hereunder) of every kind and character arising in favor of [Bilco] or third parties, including but not limited to personnel furnished by [Bilco], on account of personal injuries or death or damage to property, whether arising out of negligence on the part of Gulf or otherwise.

Blanket indemnity clauses of the type contained in the Bilco/Gulf agreement have been the subject of recent legislation in the state of Louisiana as well as elsewhere. In enacting the Louisiana Oilfield Indemnity Act, the legislature found that such clauses were an inequity foisted upon contractors and declared them to be "null and void and against [the] public policy of the state of Louisiana." La.Rev.Stat.Ann. § 9.2780(A) (West 1985). It then went on to declare any blanket indemnity clause

> ... void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons which is caused by or results from the *sole* or *concurrent negligence* or fault (strict liability) of the *indemnitee....*

*Id.* at § 9:2780(B) (emphasis added).

By its terms, the Act is applicable to master service contracts such as the agreement involved in this case. *Id.* at § 9:2780(I). It does not, however, apply to contracts governing a specific terminable performance which were executed prior to the Act's effective date of September 11, 1981. *Id.*

During the two years following the signing of the blanket agreement between Bilco and Gulf, Bilco was never called upon to perform work for Gulf. Then, on November 11, 1981, Bilco received a telephone call from a Gulf employee requesting that certain equipment be provided to Gulf's MARLIN RIG 10, a fixed platform located on the Outer Continental Shelf. Bilco agreed and sent its employees out to the rig on November 20, 1981. One of those employees was Sidney Page.

On December 5, 1981, Page was working on MARLIN RIG 10. He was using a set of power tongs owned by Bilco to "torque down" a section of tubing in the well. The tongs were held stable by a chain snubbing line. They had reached maximum torque when the throttle jammed; as Page reached up to try to manually disengage the throttle the tongs began to spin, dragging the snub line behind them. The tongs spun twice, trapping Page's hand and arm between the tubing and the chain. Page sustained serious injuries and sued Gulf and several other defendants to recover $950,000 in damages.

Gulf filed a third-party complaint against Bilco shortly after being named as a defendant in Page's suit. Gulf asserted that under the indemnity clause of the blanket agreement it was entitled to recover from Bilco all costs, legal fees and expenses incurred in connection with the defense of Page's suit. Bilco moved for summary judgment on the grounds that recovery under the contractual clause was barred by the Oilfield Indemnity Act. The District Court initially denied the motion, but later granted it without an opinion. It is from this decision which Gulf appeals.

## BEFORE OR AFTER?

 The initial question is whether the Oilfield Indemnity Act applies to the blanket agreement between Bilco and Gulf. This requires us to determine whether the agreement of August 17, 1979 was executed prior to the effective date of the Act. We conclude that it was not. The Act, therefore, governs the disposition of this case both here and below. A contract is executed, for the purposes of this Act, when all of the acts necessary to render it a binding obligation are completed. The Bilco/Gulf agreement was not executed prior to the effective date of the Act for a number of reasons.

The initial reason for our conclusion is that the agreement between the parties was subject to a suspensive condition which rendered it null under Louisiana law. La. Civ.Code Ann. art. 1770 (West 1985). A

suspensive condition is one which depends solely upon the whim of the obligor. It is "an event ... whose occurrence depends entirely on [the obligor's] will such as his wishing or not wishing something." *Id.* at comment (D). The agreement between Bilco and Gulf was subject to just such a condition. It begins with the following statement:

> This is to confirm our understanding with you concerning *any kind of work you may be requested to perform from time to time for Gulf Oil Corporation.*

(Emphasis supplied). The "contract" by its terms did not bind Gulf to employ Bilco exclusively. Gulf remained free to order from any other contractor if it so desired.

The agreement provided, at most, an understanding that when, as, and if Gulf decided to employ Bilco the terms embodied in the blanket agreement would apply. The structure of the agreement contemplated that it would become effective only upon Gulf's notice or request for any of the described services. Thus, it became effective when Gulf requested, and Bilco responded by supplying, service and equipment for MARLIN RIG 10. That occurred in November of 1981, after the effective date of the Oilfield Indemnity Act.

The agreement was not one which governed a specific, terminable performance. A prerequisite to the formation of a contract in Louisiana is that the "object of the contract be determined at least as to its kind." La.Civ.Code Ann. art. 1973 (West 1985). The agreement between Bilco and Gulf refers to "types of work contemplated to be done," but it fails to identify a determinate time, place, or type of performance. It simply does not state whether, when or where Bilco would be required to perform services for Gulf; nor did it state whether, when, or where Gulf was required to call upon Bilco for such service. In a nutshell, the blanket agreement merely sets out the rules of the game in the event that the parties decide to play ball.

Our conclusion in this regard is buttressed by the decisions of two experienced Louisiana jurists on the federal bench. In *Credeur v. Union Oil Company of California,* No. 82–0275 slip op. at 2 (W.D.La. June 27, 1985), Judge Davis, now a member of this Court, interpreted a similar master service agreement. He concluded that it created "a separate, independent contract ... on each occasion" that services were provided. Judge Shaw, likewise an experienced Louisiana judge, reached a similar conclusion in *Home Insurance Co. v. Garber Industries, Inc.,* 588 F.Supp. 1218, 1222 n. 6 (W.D.La.1984). Thus, we are confident that our decision on this issue properly reflects the correct *Erie*[3] interpretation of Louisiana law.

## THE LOST CAUSE

 We do not, and cannot, determine the effect of the Act's applicability on the basis of the record before us. We are not a court of first instance, and the case is before us on a summary judgment without opinion or findings of fact by the Court below and a Rule 54(b) certificate. There is no factual record or determination by the trial court whether (i) Gulf was guilty of "sole or concurrent negligence or fault (strict liability) or is charged with that of an agent, employee, or an independent contractor who is directly responsible to Gulf as mentioned in paragraph B of the Act, La.Rev.Stat.Ann. § 9:2780(B); and, if not, whether (ii) the indemnity contract is or is not valid, or void, under the Act."

For want of these critical factual findings "[T]here is nothing but the sheerest speculation," *Byers v. Byers,* 254 F.2d 205, 210 (5th Cir.1958), as to the manner in which this controversy may ultimately be resolved. Because the factual record below is incomplete, this controversy must await yet another decision before it may be wholly and completely disposed of.

The judgment of the District Court is AFFIRMED in its holding that the provisions of the Louisiana Oilfield Indemnity Act apply to this case. The summary judgment in favor of Bilco, however, is RE-

---

**3.** *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

VERSED as there remain material issues of fact to be determined. The case is RE-MANDED to the District Court for proceedings not inconsistent with this opinion.

AFFIRMED IN PART.

REVERSED IN PART AND REMAND-ED.