Alton P. KNAPP, Jr.,
Plaintiff-Appellant,

v.

CHEVRON USA, INC., Defendant Third Party Plaintiff-Appellee,

v.

P.B.W., INC., National Security Fire & Casualty Company, and Integrity Insurance Company, Third Party Defendants-Appellants.

No. 84–3399.

United States Court of Appeals, Fifth Circuit.

Feb. 4, 1986.

Neblett, Beard & Arsenault, Richard W. Beard, Herman M. Savoie, Jr., Alexandria, La., for Knapp.

Adams & Reese, Mark J. Spansel, Deborah B. Rouen, New Orleans, La., for P.B.W. and Nat. Sec.

M. Kay Guidry, Plaquemine, La., for Integrity Ins.

Milling, Benson, Woodward, Hillyer, George B. Jurgens, III, New Orleans, La., for Chevron USA.

Before BROWN, POLITZ, and JOLLY, Circuit Judges.

POLITZ, Circuit Judge:

In this appeal we consider, *inter alia,* the validity of the Louisiana Oilfield Indemnity Act of 1981, La.R.S. 9:2780, and its application to an indemnification agreement executed by Chevron USA and P.B.W., Inc. (PBW). Alton P. Knapp, an employee of PBW, filed suit against Chevron for personal injuries sustained in a fall from a safety net while he was painting one of Chevron's offshore platforms. Knapp's claims against Chevron were based on allegations of negligence and strict liability. Invoking a contractual indemnity agree-ment, Chevron filed a third-party action against PBW and its insurers.

Perceiving no genuine issue of fact, finding Chevron free of negligence, and finding that the asserted rules of strict liability did not apply, the district court rendered summary judgment in favor of Chevron. By consent, the matter was then referred to a magistrate who rendered judgment holding PBW and its insurers liable to Chevron for the costs of defense of the suit.

*Facts & Procedural Background*

Knapp was a member of a PBW crew dispatched to blast and paint one of Chevron's offshore production platforms. On July 1, 1982, while Knapp was standing in a safety net approximately 30 feet above the platform floor, a stabilizing rope on the net either broke or became unfastened. Knapp fell, sustaining serious injuries.

Safety nets are routinely used in PBW's blasting and painting operations. The nets and accompanying gear are provided, installed, moved, and removed by PBW. Typically, the nets are attached to the platforms by metal cables, clamps, and bolts, and are secured by several stabilizing ropes. At the time of Knapp's accident, the net he was using had only one stabilizing rope.

The district court found no evidence of negligence on the part of Chevron. Applying Louisiana law, the court concluded that the net was not an appurtenance of the platform. This conclusion vitiated the claim of strict liability and led to the dismissal of Knapp's complaint. Chevron moved for summary judgment against PBW for costs of defense under its contractual indemnity agreement, executed May 5, 1982, which provided:

Contractor [PBW] agrees to defend and hold Company [Chevron] indemnified and harmless from and against any loss, expense, claim or demand for:

(a) Injury to or death of Contractor's employees or for damages to or loss of Contractor's property in any way arising out of or connected with the per-

formance by Contractor of services hereunder; and

(b) Injury to or death of, third persons or the employees of Company, or for damages to or loss of property of Company or of third persons, in any way arising out of or connected with performance by contractor of services hereunder, unless caused solely by the negligence of Company; provided that if such injury, death, damage or loss is caused by the joint or concurrent negligence of Contractor and Company, each shall be liable for one-half of the loss, expense, claim, or demand resulting therefrom.

Prior to execution of the indemnity agreement, the Louisiana Legislature enacted the Oilfield Indemnity Act of 1981, Acts 1981, No. 427, § 1, effective September 11, 1981, which provides in pertinent part:

A. The legislature finds that an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in some agreements pertaining to wells for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, to the extent those provisions apply to death or bodily injury to persons. It is the intent of the legislature by this Section to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.

B. Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, cr an agent, employee, or an independent contractor who is directly responsible to the indemnitee.

La.R.S. 9:2780 (1985).

In granting Chevron summary judgment against PBW, the magistrate was of the opinion that since Chevron was found free of negligence and not responsible under a strict liability theory, La.R.S. 9:2780 did not bar recovery of the costs of defense. The magistrate awarded attorneys' fees and litigation expenses. We affirm the judgment dismissing Knapp's claims against Chevron. We reverse the judgment granting Chevron attorneys' fees and costs.

*Analysis*

1. Strict Liability.

Although noting the negligence issue, Knapp principally contends on appeal that the district court erred in rejecting his strict liability claim. The Louisiana Civil Code imposes strict liability on the owner of a building. Article 2322 of the Code provides:

The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.

Imposition of liability under this article requires that there be: (1) a building, (2) owned by the defendant, (3) in "ruin" either from a vice in its original construction or from a failure of repair. *Olsen v. Shell Oil Co.*, 365 So.2d 1285 (La.1978).

■ A fixed drilling platform is a building within the intendment of this rubric. *Id.* The duties imposed by the article extend to the building and its appurtenances. As the Supreme Court of Louisiana observed in *Olsen*, 365 So.2d at 1291, *quoting Cothern v. LaRocca*, 255 La. 673, 232 So.2d 473, 477 (La.1970), " 'necessary appurtenances to structures and movables made immovable by attachment, which are defec-

tive or have fallen into ruin, also may be included within that term "building"'' for purposes of the building-owner's delictual responsibility under Article 2322."

Knapp maintains that the safety net was an appurtenance of the drilling platform. This argument misperceives Louisiana law. As we recently observed in *Steele v. Helmerich & Payne Intern. Drilling Co.,* 738 F.2d 703, 705 (5th Cir.1984), after reviewing controlling Louisiana precedents:

> In determining whether an attachment is an appurtenance of a building the two general considerations are: how securely the addition is attached to the building and the degree of permanence the parties intend for the addition.

In the case before us, the net fails on both points. It was brought to the platform by PBW for use during the painting and was removed thereafter, along with PBW's other equipment. It was attached to the platform by two cables, fastened by readily removable clamps. The stabilizer rope was tied to the net and to a convenient point on the platform. There was no permanence of attachment either apparent or intended. These facts are very similar to the factual scenario in *Steele* wherein we found that a "stabbing board" was not an appurtenance of the drilling platform at issue there:

> [T]he stabbing board was a part of the specialized equipment brought aboard defendant's rig by plaintiff's employer, Weatherford-Lamb. The stabbing board was to be attached to the derrick only for the duration of the Weatherford-Lamb casing job.... Upon completion of its casing job, Weatherford-Lamb intended to transport the stabbing board, along with its other equipment, to the next job.

*Id.* The safety net involved in Knapp's accident was not an appurtenance of the platform. Chevron was therefore not subject to the strict liability provision of La. Civ.Code art. 2322, and summary judgment on this issue was proper.

2. Negligence.

Knapp alleged and now argues that Chevron's negligence contributed to the ac-

cident. He alleged that a Chevron employee assisted in the improper rigging of the net and that a Chevron supervisor was in the area and either failed to notice the inadequate rigging or failed to warn him. The district court found no evidence in support of these allegations. We find none, for the evidence is to the contrary. The party opposing a motion for summary judgment may not rely simply on the allegations of his pleadings but must establish a genuine issue of material fact by countering competent evidence offered by the moving party with like evidence. *White v. United Parcel Service,* 692 F.2d 1 (5th Cir.1982). Knapp failed to meet this burden. Summary judgment on this issue was also appropriate.

3. The obligation to defend.

The most serious issue presented by this appeal relates to the obligation of PBW to defend Knapp's suit against Chevron. The magistrate found that PBW was so obliged. We disagree.

Knapp's complaint against Chevron claimed both negligence and strict liability. Paragraph XI alleged:

> The accident referred to herein was caused by the negligence of the defendant, Chevron USA Incorporated, and/or its agents, servants, employees, or others for whom it is legally responsible and by defects in the aforementioned platform and its appurtenances for which Chevron USA Incorporated, defendant herein, is accountable in strict liability.

The indemnity provision upon which Chevron bases its claim for the costs of defense, as quoted above, requires that PBW defend Chevron and indemnify it from "any loss, expense, claim or demand" for the injury or death of any PBW employee on the Chevron job. There is no specific reference to negligence on the part of Chevron and, in accordance with our firmly established rule, an indemnification agreement will not be interpreted to cover the negligence of the indemnitee unless the intent of the parties to provide that indem-

nification is clear and express. The very language now at issue has been before this court on several occasions. We have held that this language does not provide an indemnification respecting Chevron's own negligence. In *Wiley v. Offshore Painting Contractors, Inc.*, 711 F.2d 602, 610 (5th Cir.1983), *quoting Smith v. Chevron Oil Co.*, 517 F.2d 1154, 1157 (5th Cir.1975), we rejected Chevron's claim for indemnity, unequivocally finding that the subject indemnity provision did not " 'provide for indemnification for [Chevron's] own negligence in the clear and specific language required by Louisiana law.' " *See also Sullen v. Missouri Pacific R. Co.*, 750 F.2d 428 (5th Cir.1985); *Hyde v. Chevron, U.S.A., Inc.*, 697 F.2d 614 (5th Cir.1983).

Chevron maintains that since it was found free of negligence it is entitled to recover from PBW the costs of defending Knapp's negligence action. We recently rejected this very contention by Chevron in the *Sullen* case. In *Sullen* the complaint was based solely on allegations of Chevron's negligence. Chevron successfully defended against that action by showing that it was Sullen's statutory employer, accountable for Louisiana worker's compensation benefits but shielded, by Louisiana law, from tort liability. After this successful defense, Chevron sought to recover the costs of defense from its indemnitor, Sullen's immediate employer. We rejected Chevron's claim after surveying controlling Louisiana cases and concluding that the determination whether a defense was owed turns on the allegations of the complaint. "Whether a party is obliged to tender a defense to another party depends entirely upon the allegations in the precipitating pleadings." *Sullen*, 750 F.2d at 433.

▮ Applying these well-established rules to the case at bar we find no basis for allowing Chevron to recover for the costs of defense against the negligence claim. An indemnity agreement will not be taken to include negligence of the indemnitee unless the language is express and certain. The Chevron/PBW agreement now before us does not specifically speak to the negli-

gence of Chevron, as relates to any claims made by PBW employees. Accordingly, the contractual indemnity does not extend to the defense of claims based solely on allegations of negligence on the part of Chevron. *Sullen.* The pleadings allege negligence. No defense of this claim is warranted.

We are aware that this holding is contrary to the recent decision of a Louisiana intermediate appellate court in *Livings v. Service Truck Lines of Tex., Inc.*, 467 So.2d 595 (La.App.1985). We decline to follow that decision which, without citation of authority or discussion, deferred the determination of a party's right to a defense until after that party's "negligence or fault" has been "fully explored." *Id.* at 599. *Livings* conflicts with a prior decision authored by Justice Lemmon of the Louisiana Supreme Court, while a member of a Louisiana intermediate appellate court, *Sullivan v. Hooker Chemical Co.*, 370 So.2d 672 (La.App.1979). It is also inconsistent with a long line of Louisiana cases holding that the decision whether a defense is due is an "up front" decision which depends entirely on the allegations of the relevant pleadings. *American Home Assurance Co. v. Czarniecki*, 255 La. 251, 230 So.2d 253 (1969), *citing with approval Benoit v. Fuselier*, 195 So.2d 679 (La.App. 1967) (Tate, J.); *Bourque v. Lehmann Lathe, Inc.*, 476 So.2d 1129 (La.App.1985); *Collier v. Williams-McWilliams Co., Inc.*, 459 So.2d 719 (La.App.1984), *cert. denied*, 462 So.2d 1246 (1985); *Guilbeau v. Roger*, 443 So.2d 773 (La.App.1983), *cert. denied*, 446 So.2d 1224 (1984) (by the author of *Livings*); *Young Oil Co. of La., Inc. v. Durbin*, 412 So.2d 620 (La.App.1982); *West Bros. of DeRidder, La. v. Morgan Roofing*, 376 So.2d 345 (La.App.1979); *Lees v. Smith*, 363 So.2d 974 (La.App.1978); *Ada Resources v. Don Chamblin & Associates*, 361 So.2d 1339 (La.App.1978); *C.A. Collins & Son v. Pope Bros. Steam Cleaning Co.*, 155 So.2d 278 (La.App.1963); *Kelly v. United States Fidelity & Guaranty Co.*, 76 So.2d 116 (La.App.1954); *Lang v. Jersey Gold Creameries*, 172 So. 389 (La.App. 1937). *See also* Annotation: Liability In-

surer—Duty to Defend, 50 A.L.R.2d 458; Annotaton: Liability Insurer—Refusal to Defend, 49 A.L.R.2d 694; 45 C.J.S. Insurance § 933; 7 Am.Jur. Automobile Insurance, §§ 160, 162; 14 Couch on Insurance 2d, § 51:40, 7A Appleman on Insurance Law & Practice, § 4683.

### 4. The Outer Continental Shelf.

Knapp's accident occurred on a fixed drilling platform located on the Outer Continental Shelf off the coast of Louisiana. Those structures have been declared federal enclaves by the Outer Continental Shelf Lands Act (Lands Act), 43 U.S.C. §§ 1331 *et seq.* The Lands Act directs application of the laws of the adjacent state to resolve all disputes arising on the Shelf "to the extent that they are applicable and not inconsistent with [the Lands Act] or with other Federal laws and regulations." 43 U.S.C. § 1333(a)(2)(A).

In *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), the Supreme Court made clear that Louisiana law would be applied to accidents on fixed platforms on the Outer Continental Shelf offshore Louisiana. The Court declared that Congress had directed the adoption of state law as "surrogate federal law." 395 U.S. at 357, 89 S.Ct. at 1837. We therefore do not here sit as an *Erie* court. We are a *Lands Act* court. The difference between the two courts, albeit not defined, has been alluded to. The Supreme Court observed in a matter involving Louisiana law and the Lands Act: "This is not to imply that a federal court adjudicating a claim under state law as absorbed in the Lands Act must function as it would in a diversity case." *Chevron Oil Co. v. Huson*, 404 U.S. 97, 103 N. 5, 92 S.Ct. 349, 353 n. 5, 30 L.Ed.2d 296 (1971). When the *Huson* case wended its way

through our court, Chief Judge Emeritus Brown pointedly commented about the role of a federal court in a Lands Act case: "It is most certainly not just an *Erie* Court of the state in which it sits." *Huson v. Otis Engineering Corp.*, 430 F.2d 27, 30 (5th Cir.1970). *See Olsen v. Shell Oil Co.*, 708 F.2d 976 (5th Cir.1983).

It may be that a *Lands Act* court has more discretion and broader authority in its evaluation, analysis, and application of state law to a given fact situation than an *Erie* court. We are inclined to so believe. It may be that a *Lands Act* court may more readily reject the interpretation and/or application of state law by an intermediate state appellate court than an *Erie* court. Regardless, whether as a *Lands Act* court with arguably more freedom of action, or as an *Erie* court within its sharply delimited authority, we decline to follow the ruling or rationale of *Livings* as not truly reflective of established and controlling Louisiana law.

### 5. Indemnity-Strict Liability.

■ This conclusion does not end our inquiry into the cost of defense issue because Knapp's complaint included an allegation that Chevron was liable under the doctrine of strict liability. The rule which permits of indemnification for negligence only when the indemnification agreement reflects a clear and specific intent to include such, does not apply to strict liability, a genus of liability which includes liability without fault.[1] Chevron is sued as a building owner whose edifice has fallen into ruin as a consequence of vice in original construction or neglect of repairs. This liability may result from negligence or it may be on a non-negligent basis.

---

1. An equally divided intermediate appellate state court, sitting en banc, recently opined that the strict construction rule was applicable to indemnification for strict liability. *Soverign Ins. Co. v. Texas Pipeline Co.*, 470 So.2d 969 (La.App.1985). The Supreme Court of Louisiana granted certiorari and currently has that case under submission. We opt to follow our decision in *Hyde v. Chevron U.S.A., Inc.*, 697

F.2d 614 (5th Cir.1983), which found the strict construction rule inapplicable to strict liability, a view we recently reaffirmed in *Rodriguez v. Olin Corp.*, 780 F.2d 491 (5th Cir.1986), which rejected the reasoning of the Louisiana court of appeal in *Soverign.* This conclusion obliges us to consider Louisiana's Oilfield Indemnity Act of 1981.

If the Chevron/PBW indemnity agreement is valid, Chevron is entitled to indemnification for all aspects of the strict liability claim, including the cost of defense. PBW maintains that the indemnity agreement is invalid because it is prohibited by the Louisiana Oilfield Indemnity Act of 1981, La.R.S. 9:2780. That Act renders any agreement "void and unenforceable to the extent that it purports to or does provide defense or indemnity ... to the indemnitee against loss or liability ... [involving] negligence or fault (strict liability) of the indemnitee." Chevron counters with the alternative assertions that the Oilfield Indemnity Act (actually an anti-indemnity act) is unconstitutional or, if constitutional, should not be applied because it is inconsistent with federal laws.

■ Chevron argues that R.S. 9:2780 violates the equal protection clause of the fourteenth amendment to the Constitution and similar state constitutional provisions. We are not persuaded. This legislation passes constitutional muster upon a showing that it bears a rational relationship to a legitimate state interest. That relationship is manifest. If not *the* most important industry, the oil, gas and mineral industry is *one* of the most important industries in the state of Louisiana. Its tremendous impact on the vitality and well-being of the state's economic life cannot be gainsaid. The industry affects large numbers of people, both directly and indirectly, whose very present and future are immediately tied to its vagaries. The size and statewide ubiquity of the industry obviously prompted the Louisiana Legislature to adopt the subject legislation.

It is universally known that the exploration for oil, gas and other minerals is extremely hazardous. Any action which might have a substantial effect on safety in that setting finds an instant audience. So it is with the Oilfield Indemnity Act of 1981. It prevents one from requiring another to indemnify one's own negligence or fault. If a person is permitted to insulate himself from his own negligence, the motivation to institute and enforce safe work practices and conditions is at best attenuated. One who remains liable and exposed for his own negligence is more likely to act with care. This Act is a rational attempt to improve oilfield safety. It is not unconstitutional. *See* the incisive and insightful observations by Judge Collins in *Bryant v. Platform Well Service, Inc.*, 563 F.Supp. 760 (E.D.La.1983), *followed by* Judge Hunter in *Aucoin v. Pelham Marine, Inc.*, 593 F.Supp. 770 (W.D.La.1984); and by Judge Veron in *Moser v. Aminoil, U.S.A., Inc.*, 618 F.Supp. 774 (W.D.La.1985).

■ Chevron further argues that R.S. 9:2780 is a special law and, as such, is forbidden by Article III, § 12 of the Louisiana Constitution. This argument is without merit. The Act is applicable statewide to all involved in drilling for oil, gas, water, or other minerals. It does not affect "only a certain number of persons within a class...." *Teachers' Retirement System of Louisiana v. Vial*, 317 So.2d 179, 183 (La.1975). It is not a prohibited special law because it is not "one directed to secure some private advantage or advancement for the benefit of private persons." *Id.* The Act is not contrary to the Louisiana Constitution.

■ Chevron further contends that the Lands Act prohibits the application of Louisiana law to platform-based actions because it is inconsistent with federal law. We do not agree. The Supreme Court made abundantly clear in *Rodrigue* and *Huson* that Louisiana law, not maritime or admiralty law, was to be applied to the fixed platforms on the Outer Continental Shelf. Chevron argues, however, that R.S. 9:2780 is inapplicable because it is inconsistent with federal law, specifically §§ 5(b) and 5(c) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 905(b) & (c). *See* 43 U.S.C. § 1333(b). Chevron misperceives these provisions. In enacting § 905(b) Congress did not create a new federal cause of action, but rather provided a remedy and mechanism for enforcing pre-existing maritime actions. *Hall v. Hvide Hull No. 3*, 746 F.2d 294 (5th Cir.1984), *cert. denied sub nom. Avondale*

*Shipyards, Inc. v. Rosetti,* —— U.S. ——, 106 S.Ct. 69, 88 L.Ed.2d 56 (1985); *Parker v. South Louisiana Contractors, Inc.,* 537 F.2d 113 (5th Cir.1976). In *Christoff v. Bergeron Industries, Inc.,* 748 F.2d 297, 298 (5th Cir.1984), we addressed this question, cited *Parker,* and "held that § 905(b) neither extended the boundaries of traditional admiralty jurisdiction nor converted ordinary tort claims against vessels into federal questions independent of admiralty."

Section 5(c), 33 U.S.C. § 905(c), added by the 1984 amendments to the LHWCA, P.L. 98–426, 98 Stat. 1639, permits certain indemnity agreements where "the negligence of a vessel causes injury to a person entitled to receive benefits under this Act." Chevron argues that this allowance of vessel-related indemnity agreements, and the absence of a specific prohibition of platform-related indemnity agreements, leads inexorably to the conclusion that Louisiana's Oilfield Indemnity Act of 1981 is invalid as inconsistent with congressional intent as set forth in "Federal laws," specifically 33 U.S.C. §§ 905(b) & (c). We are not persuaded. Neither the 1972 amendments adding § 5(b) nor the 1984 amendments adding § 5(c) to the LHWCA proscribe non-vessel related indemnity agreements. The distinction between vessels and non-vessels is well-established. We will not impute to congressional silence a desire to apply the 1984 LHWCA amendments to non-vessels. Nor are we persuaded that these amendments preempt the field. *See Olsen v. Shell Oil Co.,* 708 F.2d 976 (5th Cir.1983).

We are convinced that the Lands Act makes Louisiana law the applicable surrogate law on fixed platforms offshore Louisiana. This includes Louisiana's Oilfield Indemnity Act of 1981. As it relates to non-vessel-related indemnity agreements, it is not inconsistent with "Federal laws" and is enforceable.

■ Finally, Chevron contends that R.S. 9:2780 does not void its indemnity agreement with PBW because the Act only nullifies agreements where the indemnitee is in fact negligent or otherwise strictly liable. That argument is not without persuasive effect. It has, in fact, carried the day not only in the court *a qua,* but at other times. For example, *see Home Insurance Company v. Garber Industries, Inc.,* 588 F.Supp. 1218 (W.D.La.1984). *But see Moser v. Aminoil, U.S.A., Inc.,* 618 F.Supp. 774 (W.D.La.1985); *Aucoin v. Pelham Marine, Inc.,* 593 F.Supp. 770 (W.D. La.1984). We resist the allure of this argument in the present fact setting involving only defense costs because of the controlling Louisiana law cited *supra.* The determination whether a defense is due must be made at the outset of the litigation, by reference solely to the relevant pleadings and pertinent contractual provisions. *American Home Assurance Co. v. Czarniecki,* 255 La. 251, 230 So.2d 253 (1969); *Sullen v. Missouri Pacific R. Co.,* 750 F.2d 428 (5th Cir.1985). The ultimate outcome of the litigation is of no moment. Facts developed in discovery or otherwise known to the defendant are likewise irrelevant. *Benoit v. Fuselier,* 195 So.2d 679 (La.App. 1967).

■ From that linchpin, we look only to Knapp's pleadings and to the language of R.S. 9:2780. The pleadings allege that Chevron was negligent and was also liable under the doctrine of strict liability. The statute declares "null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense" in any lawsuit based on the negligence or strict liability of the indemnitee. The fit is exact.

It must be assumed that in adopting the subject Act the Louisiana Legislature was cognizant of Louisiana's well-established jurisprudential rule that the pleadings control the obligation to provide a defense. Had it so desired, the legislature could have changed that rule as relates to these oilfield indemnity agreements. It did not do so. We must assume that the legislature acted intentionally.

### Conclusion

We conclude that the record fully supports the district court's rulings on summa-

ry judgment finding no negligence on the part of Chevron and further finding that the safety net was not an appurtenance of the platform, thus rendering inapplicable the rule imposing strict liability on the owner of a building in ruin. We affirm those rulings. We further conclude that the magistrate erred in awarding Chevron the costs of defense of this negligence and strict liability action. Negligence is not expressly included in the indemnity agreement and, even if it were, La.R.S. 9:2780 proscribes both indemnity and defense for negligence and strict liability actions in cases such as here presented. We reverse the rulings by the magistrate.

AFFIRMED in part; REVERSED in part.