**Levence John MATTE, Plaintiff,**

v.

**ZAPATA OFFSHORE COMPANY, et al., Defendants/Third Party Plaintiffs-Appellants,**

v.

**TIMCO, INC., et al., Third Party Defendants-Appellees.**

No. 85–3067.

United States Court of Appeals, Fifth Circuit.

March 10, 1986.

Howard L. Murphy, Deutsch, Kerrigan & Stiles, Christopher Tompkins, New Orleans, La., for Zapata Offshore Co.

Edward F. LeBreton, III, Mary C. Hubbard, New Orleans, La., for Timco, Inc.

Before CLARK, Chief Judge, and POLITZ and WILLIAMS, Circuit Judges.

---

**POLITZ, Circuit Judge:**

Zapata Offshore Company and Kerr-McGee Corporation appeal an adverse summary judgment dismissing their third-party indemnification complaint against Timco Services, Inc. and its insurer. Finding no error, we affirm.

## FACTS

On March 28, 1982, Levence Matte, an employee of Timco, was injured while servicing a Zapata workover rig located on Kerr-McGee Platform No. 238, a fixed platform in the Gulf of Mexico 50 miles off the Louisiana coast. Matte was a member of a six-man Timco crew called to the rig by a verbal work order from the Kerr-McGee drilling superintendent.

Prior to the accident, Timco had entered into two master service agreements which obligated it to defend and indemnify Zapata and Kerr-McGee for any losses resulting from any personal injury claims made by Timco employees. The Kerr-McGee agreement was executed in 1977.[1] The Zapata agreement became effective in December of 1981.[2]

Matte invoked the Outer Continental Shelf Lands Act (Lands Act), 43 U.S.C. § 1331 *et seq.*, and filed a negligence action against Kerr-McGee and Zapata[3] who promptly filed third-party actions against Timco, seeking defense and indemnification under the master service agreements. Timco raised the aegis of the Louisiana Oilfield Indemnity Act of 1981, La.R.S. 9:2780,[4] and successfully moved for sum-

1. The pertinent indemnity language in the Kerr-McGee agreement provides:

   Contractor [Timco] hereby indemnifies and agrees to protect, hold and save Kerr-McGee ... harmless from and against all claims, demands and causes of action of every kind and character ... including the cost of defense thereof, arising in favor of any person, firm or organization, including but not limited to injuries to employees of Contractor ... on account of, arising from or resulting, directly or indirectly, from the work and/or services performed by contractor hereunder, whether on, off, or near the premises....

2. The Zapata indemnification provision varies in that Timco was not required to indemnify Zapata for injuries caused by Zapata's sole negligence:

   Contractor [Timco] agrees to release, protect, indemnify, defend and hold Zapata harmless from and against any and all liability, claims, demands and causes of action of every kind and character, including the cost of defense thereof, arising in favor of third parties, but only if such losses are caused by contractor or its invitees' negligence and even though such losses may have been caused or contributed to by the joint or concurrent negligence (including, but not limited to, any pre-existing condition, un..eaworthiness of a vessel, product liability, merchantability or other legal right of recovery) of Zapata or its invitees. Notwithstanding the foregoing, contractor is not obligated to indemnify Zapata for Zapata's sole negligence causing any such loss to any third party.

3. Although Zapata issued no work order to Timco, the first article of their agreement makes its terms and conditions applicable whenever Timco was working for any company simultaneously employing Zapata at the same location.

4. The Louisiana Oilfield Indemnity Act of 1981, Acts 1981, No. 427, § 1, effective September 11, 1981, found at La.R.S. 9:2780 (Supp.1986), provides in pertinent part:

   A. The legislature finds that an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in some agreements pertaining to wells for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, to the extent those provisions apply to death or bodily injury to persons. It is the intent of the legislature by this Section to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.

   B. Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.

mary judgment dismissing the indemnity claims.

## ANALYSIS

Matte's accident occurred on a fixed platform located on the Outer Continental Shelf off the coast of Louisiana. The Lands Act proclaims that these structures are federal enclaves and any dispute arising on them is to be resolved by resort to the laws of the adjacent state which, "to the extent that they are applicable and not inconsistent with [the Lands Act] or with other Federal laws and regulations ... are ... declared to be the law of the United States...." 43 U.S.C. § 1333(a)(2)(A).

■ Appellants' first contention is that the Oilfield Indemnity Act conflicts with and is preempted by the federal common law expressed in *United States v. Seckinger*, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970). We recently rejected this argument in *Doucet v. Gulf Oil Corporation*, 783 F.2d 518 (5th Cir.1986), and we do so again. As the Supreme Court made abundantly clear in *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), Congress intended that the law of the adjacent state would become surrogate federal law on fixed platforms on the Shelf, to the exclusion of rules of admiralty and common law. *Id.* at 361–63, 89 S.Ct. at 1840–41. Even if *Seckinger* accurately reflected the federal common law applicable in an instance as is here presented, a proposition we do not accept, *Seckinger*'s holding and rationale would not displace the law of Louisiana, as "the law of the United States" on the Shelf adjoining Louisiana. *Rodrigue*, 395 U.S. at 357–58, 89 S.Ct. at 1838; *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971); *Knapp v. Chevron USA, Inc.*, 781 F.2d 112ε (5th Cir.1986).

Kerr-McGee maintains that the application of the Oilfield Indemnity Act to its master service agreement with Timco violates the contract clauses of both the United States[5] and Louisiana[6] Constitutions. We need not decide that issue. If the master service agreement was a contract, the Oilfield Indemnity Act, by its express terms, would not apply, for it affects only contracts executed after its effective date. La.R.S. 9:2780 I. But the 1977 agreement, standing alone, is not a binding contract. The intent of the parties is clearly expressed. The agreement provided the framework for subsequent contracts which were to result from verbal or written work orders which each party remained free to accept or reject. The agreement declared simply: "this Agreement does not obligate Kerr-McGee to order or authorize such work or services, nor does it obligate contractor [Timco] to accept the same."

■ We considered the legal effect of a similar master service agreement in *Page v. Gulf Oil Corp.*, 775 F.2d 1311 (5th Cir. 1985), and there concluded that it was not a binding contract but "merely sets out the rules of the game in the event the parties decide to play ball." *Id.* at 1315. We conclude that a binding contract under the Kerr-McGee/Timco master service agreement did not come into existence until after the offer and acceptance of an individual work order. *Page; accord Moser v. Aminoil, U.S.A., Inc.*, 618 F.Supp. 774 (W.D. La.1985); *Credeur v. Union Oil Co.*, No. 82–0275 (W.D.La.1983) (Davis, J.) (printed as appendix to *Moser*, 618 F.Supp. at 782); *Wilson v. J. Ray McDermott & Co., Inc.*, 616 F.Supp. 1301 (E.D.La.1985); *Durant v. Chevron U.S.A., Inc.*, 594 F.Supp. 527 (E.D.La.1984); *Home Ins. Co. v. Garber Industries, Inc.*, 588 F.Supp. 1218 (W.D.La. 1984). Since the work order involved herein was issued by Kerr-McGee after the effective date of the Oilfield Indemnity Act, that legislation may be applied to preclude indemnity for Matte's injury. *See Lirette v. Union Texas Petroleum Corp.*, 467 So.2d 29 (La.App.1985); *see also Texa-*

---

5. Article I, § 10 of the Constitution of the United States provides:

No state shall ... pass any ... law impairing the obligation of contracts....

6. Article I, § 23 of the Louisiana Constitution of 1974 provides:

No ... law impairing the obligation of contracts shall be enacted.

*co, Inc. v. Short,* 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 758 (1982).

█ Zapata advances a final contention, one which has not heretofore been addressed by this court. Zapata maintains that the Oilfield Indemnity Act is not applicable to its master service agreement because of a provision contained therein. The Zapata/Timco agreement was executed after the Louisiana Legislature adopted the Oilfield Indemnity Act and it reflects an awareness of that Act. The Zapata agreement specifies:

Whenever the work or services contemplated by this Agreement are conducted in, on or above the navigable or territorial waters of the United States or its Outer Continental Shelf, including ... any work or services conducted on or above artificial islands or fixed structures, the law governing this Agreement shall be the General Maritime Law of the United States.

The district court found this provision invalid and unenforceable. We are in full agreement with that ruling, and so hold, being convinced that this "choice of law" provision violates the public policy of both Louisiana and the United States.

Louisiana's Oilfield Indemnity Act was enacted after an express legislative finding "that an inequity is foisted upon certain contractors and their employees by the defense or indemnity provisions" which are "declare[d] null and void and against public policy of the state of Louisiana." La.R.S. 9:2780 A. Louisiana's lawmakers fashioned a policy designed, in part, to remedy a perceived imbalance in the relative bargaining position of contracting parties in the oil industry, for the purpose of enhancing safety in that dangerous industry. *Knapp.* To permit parties to contract around the Oilfield Indemnity Act would reinstate as the norm their unequal bargaining positions, and defeat the purpose of that legislation. We will not participate in such an obvious end-run of the Louisiana

Legislature's effort to improve oilfield safety.[7]

Louisiana permits parties to select the law which will govern their contractual relationship. This right is not absolute, however, and must yield to public policy considerations. As a Louisiana intermediate appellate court recently held in *Lirette v. Union Texas Petroleum Corp.,* 467 So.2d at 32:

"Parties are free to contract as to the law applicable to their agreements, and such stipulations will be given effect in the courts ... unless there are legal or strong public policy considerations justifying the refusal to honor the contract as written." *ADR v. Graves,* 374 So.2d 699 (La.App. 1st Cir.1979). *Davis v. Humble Oil & Refining Company,* 283 So.2d 783 (La.App. 1st Cir.1973).

*See also NCH v. Broyles,* 749 F.2d 247 (5th Cir.1985) (Louisiana law). As a Lands Act court, we apply that Louisiana rubric. *Rodrigue; Huson.* The public policy of Louisiana is clear, certain, and unambiguous. Any provision which purports to provide a defense or indemnity to an indemnitee for claims for injury or death alleged to have been caused by the indemnitee's negligence or strict-liability accountability, is "void and unenforceable." La.R.S. 9:2780 B.

█ We further conclude that the Zapata choice-of-law provision violates the federal policy expressed in the Lands Act, which seeks to apply the substantive law of the adjacent states to problems arising on the Shelf. This policy of federal deference reflects the Congress's recognition of the special relationship which exists between the Outer Continental Shelf and the adjacent states. *See Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981); *Rodrigue; Laredo Offshore Constructors, Inc. v. Hunt Oil Co.,* 754 F.2d 1223 (5th Cir.1985).

We therefore hold that the Zapata/Timco indemnity agreement is void and unen-

---

**7.** Viewed through the prism of the findings of the Louisiana Legislature, we give no credence to Zapata's assertion that Timco "voluntarily" forfeited the protections extended to it and its employees by La.R.S. 9:2780.

forceable to the extent that it is contrary to the express terms and conditions of the Louisiana Oilfield Indemnity Act of 1981.

The judgment of the district court dismissing the third-party indemnification complaint against Timco and its insurer is AFFIRMED.