Tony Mitchell HAMILTON

v.

MESA PETROLEUM COMPANY.

Civ. A. No. 79–2598.

United States District Court,
E. D. Louisiana.

Aug. 8, 1980.

James A. George, George & George, Baton Rouge, La., for plaintiff.

Russell M. Cornelius, Normann & Normann, New Orleans, La., Joseph A. Reilly, Jr., Henderson, Hanemann & Morris, Houma, La., for intervenor.

## MEMORANDUM AND ORDER

JACK M. GORDON, District Judge.

This matter is before the Court on the motion of Houma Welders, Inc., hereinafter referred to as "Houma," for summary judgment on the third party complaint of Mesa Petroleum Company, hereinafter referred to as "Mesa." Tony Mitchell Hamilton, a welder employed by Houma, was injured aboard an offshore stationary platform located in the Gulf of Mexico on the Outer Continental Shelf. The platform was owned and operated by Mesa. While performing welding operations on the top deck of the platform, plaintiff was injured as a result of having fallen approximately twenty-three feet to the lower deck. Plaintiff filed suit against Mesa alleging that his injuries were caused by the negligence of Mesa and by defects in the platform. Houma intervened in this litigation to recover the amount of compensation benefits which it has previously paid and whatever future benefits it may be required to pay plaintiff under the provisions of United States Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901, et seq. Mesa filed a third party claim against Houma alleging that:

. . . should it be found at fault or responsible therefor, that such fault is passive, secondary, vicarious, and remote as compared to the active, direct and proximate fault on the part of Houma Welders, Inc., in that Houma Welders, Inc., was in direct violation and breach of its duty toward Mesa Petroleum Company by failing to adhere to standing and express safety rules during the course of its work.

A similar claim is asserted by Mesa against Houma with respect to plaintiff's claim that Mesa is strictly liable for the defective condition of the platform.

Mesa supports its contention that Houma was actively and directly at fault by failing to adhere to "standing and express safety rules" with the deposition testimony of Preston Frederick.[1] Frederick's testimony concerning these specific safety rules is as follows:

Q. How did you give instructions to Houma Welders?

A. Through Bobby.

Q. How would you assess, in general, the work quality of the Houma Welders' crews?

A. Some of the best I've seen offshore. The people are real good people—good welders, good supervisors.

\* \* \* \* \* \*

Q. Did you have any discussions with Mr. Riles [Cruse's predecessor] and Mr. Cruse about safety on the platform?

A. Periodically we discussed safety.

Q. Did you give them any *specific* instructions regarding safety?

A. The only thing I remember discussing with them was that I wanted all our hands to wear life jackets when working above water and safety belts when working above gratings or something like that.

\* \* \* \* \* \*

Q. What I'm driving at is: What does it [the safety belt] hook to?

A. Anything. Anything that's stationary.

Q. For instance, what?

A. Grating, pad eyes.

Q. You haven't seen safety belts used where you run a line from the belt to something stationary?

A. I don't think I've ever seen that.

Q. All right.

A. *In fact, most places I've seen safety belts they were just worn and not used.*

---

1. According to Frederick his function was ". . . to see that things are done right and safely, to make sure Mesa gets their money's worth, and that's about it." Frederick deposition, p. 27.

Q. They don't do any good that way, do they?

A. None whatsoever.

Q. Have you seen that done out at this particular job?

A. *I don't think so.*

Q. They didn't wear the belts, is that what you're saying?

A. Well, *sometimes they wore them and hooked them up to the grating,* the grating that was above where they were welding. I've seen them hook them to that. But they have to move quite often, you know. As they're welding, they're moving every few minutes. They have to disconnect it while they're moving and hook it up when they get to where they're going.

Q. Did you see any of Houma Welders' employees wearing safety belts on the day of the accident?

A. I really don't recall that one way or the other. I guess you're just not looking for anything like that because you don't know there's an accident going to happen that night, you know.[2]

■ Although Mesa concedes in its statement of contested material facts that no written contract existed between it and Houma, it argues that the motion should be denied because Houma breached a duty owed to Mesa to adhere to specific safety instructions. The only legal predicate for Mesa's argument is the decision in *Holden v. Placid Oil Company,* 473 F.Supp. 1097 (E.D.La.1979), wherein the court held:

. . . if a claim of indemnity founded in tort is premised on an alleged *duty owed by the indemnitor directly to the indemnitee,* such a claim is not barred by § 905(a). (emphasis original) 473 F.Supp. at 1100.

In reaching this conclusion, the court in *Holden* interpreted the seminal decision of

*ODECO v. Berry Bros. Oilfield Services,* 377 F.2d 511 (5th Cir. 1967), cert. denied, 389 U.S. 849, 88 S.Ct. 102, 19 L.Ed.2d 118 (1967), and its progeny as only proscribing indemnity claims based on a duty of care the indemnitor owed to the injured person. Inasmuch as such a claim of indemnity is "on account of" the employee's injury, and therefore barred by 905(a), the *Holden* court concluded that a claim of indemnity premised on a duty owed by the indemnitor to the indemnitee is not barred by 905(a). The court's conclusion that recovery of indemnity on this basis did not arise "on account of" the employee's injury was derived from the holding in *Berry Bros.* that an employer may continue to remain liable for indemnity on the basis of an express or implied contractual obligation. The *Holden* court reasoned:

Section 905(a) of this Act does not bar such recovery because a claim for indemnity based upon such an obligation is not, in the words of that section, "on account of" the employee's injury or death. Rather, it is grounded upon an independent obligation that exists directly between the indemnitor and the indemnitee. 473 F.Supp. at 1100.

Although this analysis is novel in the context of a longshoreman injured aboard a stationary platform, the concept is not without precedent. In *Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), it was established that a shipowner could recover indemnity against a stevedore for the latter's breach of its warranty of workmanlike performance. This right to indemnification, which existed entirely independent of tort theories, was strictly contractual in nature.

The allure of following the *Holden* path in resolving the present question is enhanced by recent jurisprudential developments in Louisiana law.[3] By application of Louisiana Civil Code Art. 2322, a platform

---

2. Frederick deposition, pp. 33–35 and 38–39. (emphasis added)

3. The Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, et seq. (1953) makes Louisiana

law applicable to fixed offshore platforms. *Rodrigue v. Aetna Casualty and Surety Co.,* 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969).

owner has a "non-delegable duty to keep his [platform] and its appurtenances in repair so as to avoid unreasonable risk of injury to others, and he is held strictly liable for injuries to others resulting from his failure to perform this duty imposed by law upon him." *Olsen v. Shell Oil Co.*, 365 So.2d 1285, 1292 (La.1979). See also *Champagne v. Chevron, U.S.A.*, 605 F.2d 934 (5th Cir. 1979); *Rodrigue v. Dixilyn Corporation*, 620 F.2d 537, No. 78–2654 (5th Cir. July 3, 1980). The duty owed by stationary platform owners is now similar in nature to, and perhaps greater in reach than, the duty of seaworthiness which the Supreme Court held shipowners owed to longshoremen in *Sea Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). Extension of the doctrine of seaworthiness to cover longshoremen precipitated recovery of indemnity by the shipowner based on the stevedore's breach of its warranty of workmanlike performance. The net result of this circuitous recovery scheme in the shipowner-longshoreman situation was the abrogation of the exclusivity provision of § 905. In 1972 the carousel was stopped by congressional act.[4] As the Fifth Circuit observed in *Olsen v. Shell Oil Co.*, 595 F.2d 1099, 1103, n.3 (5th Cir. 1979):

> . . . Since the legislature changed the liability from an absolute liability on the part of the vessel to a liability based on negligence the legislature felt it was no longer necessary to permit the vessel to collect against the employer or the stevedore.

Notwithstanding the similarity between a longshoreman aboard a stationary platform off the Louisiana coast and the defunct Sieracki seaman, this Court is constrained by § 905 and well-established judicial interpretation thereof to grant the motion for summary judgment.

In *Berry Bros.*, supra, two employees of a professional rig service contractor were injured while performing welding and repair services on a tank located on an ODECO stationary offshore platform. The employees filed suit against ODECO on a negligence theory. ODECO denied liability and filed third party complaints against the plaintiffs' employer, alleging that the explosion and resultant injuries had occurred from the employer's failure "to perform its repair contract in a reasonable and workmanlike manner," and alternatively that if the injuries were caused by fault on its part, such fault was "purely passive or technical, the injuries having been proximately caused by the active, primary negligence of Berry Bros." [5]

The court rejected ODECO's claim for indemnity based on Berry Bros.' breach of a contractual obligation to perform its contract in a reasonable and workmanlike manner because it was "unable to discover any compelling reason to justify the extension of that shipowner-stevedore originated rule to the facts of this controversy." [6] The court reasoned that the stationary platform was not a vessel, the injured employees were not seamen; therefore, the case "involve[s] none of the factors calling for the application of those special rules governing the obligation and liability of shipowners to seamen. The claims against ODECO are based purely and simply on tort principles . . . and cannot be properly viewed as involving any breach by Berry Bros. of an implied warranty of workmanlike performance." [7]

Although Mesa does not designate its claim for indemnity as one arising out of a breach of an implied warranty of workmanlike performance, there is no material difference between what it seeks and the theory asserted by ODECO in *Berry Bros.* Mesa concedes that there was no written contract between it and Houma requiring Houma to observe specified safety rules, nor was there a written agreement provid-

---

4. Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972, H.R.Rep. No.1441, 92d Congress, 2d Sess., *reprinted in* [1972] U.S.Code Cong. & Admin.News, pp. 4698, 4704.

5. 377 F.2d at 512.

6. Id., at 513.

7. Id.

ing for indemnity in the event of injury or damage caused by a breach of such rules. Therefore, the basis of Mesa's indemnity claim is reduced to Houma's implied obligation to observe what the Court concludes were a few amorphous rules pertaining to safety. As with the implied warranty of workmanlike performance, this implied obligation was allegedly owed by Houma directly to Mesa. In *Berry Bros.*, the substance of the warranty upon which ODECO sought recovery against the longshoreman's employer was that the employer failed to perform its contract in a reasonable and workmanlike fashion. The duty to exercise reasonable care, or safety, in the performance of its work under the contract is the implied obligation which Mesa contends Houma breached in the instant case. This implied obligation is the functional equivalent of the warranty of workmanlike performance.

In *White v. Texas Eastern Transmission Corporation*, 512 F.2d 486 (5th Cir. 1975), an employee of the Charles Wheatley Co. was fatally injured when component parts of a Wheatley univalve launch package upon which he was working exploded. The launch package had been sold by Wheatley to Texas Eastern Transmission Corporation and was installed on a fixed platform offshore of Louisiana. After recovering compensation benefits against Wheatley, White's supervisors filed suit against Texas Eastern and Bettis Corporation, the manufacturer of the actuator valve incorporated in the Wheatley launch system. Bettis filed a third party claim for indemnity in tort against Wheatley.

Bettis also claimed indemnity against Wheatley on a theory identical to that asserted by Mesa against Houma. The Fifth Circuit relegated its discussion of this claim to a footnote, wherein it stated:

Bettis also claimed the right to indemnity based on Wheatley's breach of an implied warranty that it would use the Bettis supplied equipment only in accordance with the specifications and recommendations supplied by Bettis. This is an apparent attempt to invoke the right of

indemnification recognized in *Ryan Stevedoring Co. v. Pan Atlantic S.S. Corp.*, 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, in a nonvessel oriented context. We clearly rejected any such attempts in *Ocean Drilling and Exploration Co. v. Berry Bros. Oilfield Service, Inc.*, 5 Cir. 1967, 377 F.2d 511, 513 & n.3, cert. denied, 1967, 389 U.S. 849, 88 S.Ct. 102, 19 L.Ed.2d 118. 512 F.2d at 488, n.5.

Mesa's attempt to invoke *Ryan* indemnification in the present case encounters precisely the same obstacle.

In *Law v. Sea Drilling Corporation*, 510 F.2d 242 (5th Cir. 1975), one employee of a service contractor was killed and another was injured when a ramp from a drill tender to a fixed platform collapsed. Both the service contractor and the platform owner were held jointly liable for the death and injury and each sought indemnity against the other on several theories. The service contractor claimed that under its contract with the platform owner, the latter was required to provide an adequate platform on which to rest the ramp of the tender vessel. The platform owner maintained that indemnity against the service contractor was justified because it had the duty, among others, to perform with due diligence and in a workmanlike manner.

With regard to the indemnity claim of the platform owner, the substance of which is the same as that asserted by Mesa, the Court of Appeals for the Fifth Circuit held:

The dying gasp at a WWLP under *Ryan* meets with a similar lack of success since we have repeatedly resisted all efforts to project this implied indemnity concept outside the special circumstances of the shipowner relationships that evoked the doctrine in the first place absent any contractual provisions in the underlying contracts. 510 F.2d at 252.

Insofar as recovery of indemnity based on this concept has been repeatedly rejected by the Court of Appeals for the Fifth Circuit, this Court is compelled to grant Houma's motion for summary judgment as to Mesa's claim for indemnity based on Houma's implied obligation to exercise safety and rea-

sonable care in the performance of its contract.

The remaining issue is whether a claim for indemnity remains available to Mesa under maritime tort principles. When presented with the same issue, the Fifth Circuit commented, "Our discussion necessarily begins, and to all effective intents and purposes, ends, with [*ODECO v. Berry Bros.*, supra]."[8] In *Berry Bros.* the court held:

> Even assuming, however as alleged in the third-party complaint, that any negligence on the part of ODECO was merely passive or secondary in character, we are nevertheless compelled to conclude that ODECO's claim for indemnity, not being based upon the violation of a contractual obligation, must fail under maritime law. 377 F.2d at 514.

After noting that the injured claimants were entitled to and did in fact receive benefits under the Longshoremen's and Harbor Workers' Compensation Act, the court commented upon the exclusive liability provision of § 905:

> The obvious purpose of this provision, as made clear by the Supreme Court in *Ryan*
>
> > is to make the statutory liability of an employer to contribute to its employee's compensation the exclusive liability of *such employer to its employees, or to anyone* claiming under or through such employee, *on account of his injury or death arising out of that employment.* In return, the employee, and those claiming under or through him, are given a substantial *quid pro quo* in the form of an assured compensation, regardless of fault, as a substitute for their excluded claims.
>
> 350 U.S. at 129, 76 S.Ct. at 235. (Emphasis in original). It is thus apparent that the Act's exclusive liability provision effectively abrogates any independent tort liability of the employer to its employees, thereby eliminating any basis which may have existed for indemnification on a tort theory. Thus, while the employer may

continue, even in spite of the exclusive liability provision of the Act, to remain liable for indemnity on the basis of an express or implied contractual obligation, in the absence of such obligation, as here, there simply exists no underlying tort liability upon which to base a claim for indemnity against the employer. 377 F.2d at 514, 515.

Mesa's claim for indemnity under tort principles is proscribed by the exclusivity provision of § 905 which eliminated "any basis which may have existed for indemnification on a tort theory."

After citing this passage from *Berry Bros.* the court in *White*, supra, stated:

> . . . it is clear from a reading of *ODECO* and other cases that there must be some underlying tort liability predicated on a breach of the employer's duty in order for a right of indemnity to arise in a third party. Here, the only breach of duty—and the only resulting theoretical liability—of Wheatley that could be asserted was a duty owed to its employee to assemble the launch package in a non-negligent manner so as to prevent injury to the employee. It is clear beyond doubt under ODECO that § 905 of L & H has extinguished this liability in favor of a compensation scheme. Thus, there remains no underlying tort liability to support Bettis' indemnity claim. 512 F.2d at 489.

Applying this rationale to the facts of the instant case, the only arguable breach of duty on Houma's part was its failure to assure that its employees were wearing and properly using the safety belts which it provided. Assuming Houma owed such a duty to its employees, § 905 removes its breach as a predicate for tort liability.

This duty was designed to protect the class of persons who perform work in precarious places from the risk of falling. The argument that this duty was owed by Houma to Mesa is an obvious attempt to reenter the door slammed shut by § 905 and *Berry*

**8.** *White*, supra, 512 F.2d at 488.

*Bros.* by disguising the warranty of workmanlike performance and implied obligation of reasonable performance as an independent basis of tort liability between employer and platform owner.

Whatever responsibility Houma had with respect to its employees' safety, it is clear that it was a duty owed to its employees and not Mesa. Assuming an independent tort duty did exist between an employer and a platform owner, the employer's obligation to indemnify the platform owner the damages it is required to pay the injured employee arises "on account of" the employee's injury.[9] In the absence of a contractual indemnity provision, "there simply exists no underlying tort liability upon which to base a claim for indemnity against the employer."[10] *Berry Bros.*, 377 F.2d at 515.

### CONCLUSION

Based on the foregoing legal authorities, the Court hereby GRANTS, the motion of Houma Welders, Inc., for summary judgment.

9. 33 U.S.C. § 905 provides, in pertinent part:
   The liability of an employer prescribed in section 904 [for compensation] shall be exclusive and in place of all other liability of such employer to the employee, . . . and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death . . . ..

10. This holding was most recently reaffirmed in *Olsen v. Shell Oil Co.*, 595 F.2d 1099, 1103–1104 (5th Cir. 1979).