Mary Louise Simboli CARNEY, et al.

v.

**MARATHON OIL COMPANY.**

Civ. A. No. 83–2517.

United States District Court,
W.D. Louisiana,
Lafayette-Opelousas Division.

March 18, 1986.

Anthony D. Moroux, Domengeaux & Wright, Lafayette, La., for plaintiff.

James R. Shelton, Pugh & Boudreaux, Lafayette, La., for intervenor.

W. Richard House, Jr., Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, La., for McDermott, Inc.

John A. Bernard and Joseph L. Lemoine, Jr., Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, La., and Thomas L. Grand, Jr., Houston, Tex., for defendant Marathon Oil Co.

John Blackwell, Gibbens & Blackwell, New Iberia, La., for defendant Normco Contractors, Inc. & Travelers.

## MEMORANDUM RULING

DUHE, District Judge.

This matter, coming before the court on cross-motions for reconsideration of this court's second ruling on a motion by Normco Contractors, Inc. ("Normco") and Travelers Insurance Company ("Travelers") for summary judgment dismissing Marathon Oil Company's ("Marathon") third-party claim for indemnity against them, presents two issues for this court's determination: (1) whether the exclusive liability provision of the Longshoremen and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 905(a), bars all third-party claims for indemnification from an LHWCA employer, and (2) the extent to which the Louisiana Oilfield Anti-Indemnity Act ("OAIA"), 9 La.Rev.Stat.Ann. 2780 (West Supp.1986), nullifies indemnity provisions in oilfield contracts.

## BACKGROUND

Plaintiffs brought this action against Marathon to recover damages for the fatal injuries sustained by their decedent, P.J. Carney, during the course of his employment with Normco, while aboard a fixed platform that was owned by Marathon and located on the Outer Continental Shelf adjacent to Louisiana. Travelers, Normco's LHWCA insurer, subsequently intervened to recover the amount it had paid plaintiffs in LHWCA benefits. Marathon then brought a counterclaim against Travelers, and a third-party action against Normco, seeking indemnification for any amounts for which it might be held liable to the plaintiffs. Marathon originally based its indemnification claims on (1) the indemnity provisions of the master-service contract that existed between Normco and Marathon at the time of the accident, and (2) Normco's alleged breach of the implied warranty of workmanlike performance ("WWLP") it allegedly owed Marathon.

In its former ruling this court found that a § 905 employer is subject to non-vessel third-party indemnity claims arising out of a contractual (express or implied) or delictual obligation that the employer owes the third party. *Carney v. Marathon Oil Co.*, 615 F.Supp. 48, 49–50 (W.D.La.1985) (citing *Horton v. Sun Exploration & Production Co.*, 616 F.Supp. 130 (W.D.La.1985); *Pippen v. Shell Oil Company*, 661 F.2d 378, 386–87 (5th Cir.1981)). Nonetheless, this court rejected Marathon's claim for indemnity on the basis of the WWLP, finding that the Fifth Circuit has eliminated the WWLP as a basis for indemnification in platform situations. At 49 (citing *Law v. Sea Drilling Corp.*, 510 F.2d 242 (5th Cir. 1975)). Moreover, though recognizing that a delictual obligation between Normco and Marathon could support an indemnity claim, because Marathon presented no evidence of such an obligation between it and Normco, summary judgment against Marathon was found to be appropriate.[1] This

---

**1.** In fact, in the earlier hearing Marathon did    not even allege a delictual obligation between

court also found that the OAIA does not render express indemnity provisions such as the one in Normco and Marathon's master-service contract null in their entirety, but "only to the extent they purport to require indemnification or defense for the indemnitee's negligence." At 50.

Marathon now (1) moves for reconsideration of the July 26, 1985 ruling dismissing its claim for indemnity on the basis of an alleged delictual obligation between Normco and Marathon, and (2) seeks a clarification of that ruling to establish whether it is entitled to maintain an indemnification claim against Normco based on breach of contract. Normco and Travelers, in turn, ask this court to reconsider its ruling on the Louisiana OAIA and hold that the Act nullifies indemnity provisions in oilfield service contracts in their entirety.

For the reasons that follow, this court affirms its July 26, 1985 ruling and (1) dismisses Marathon's claim for indemnity based on an alleged delictual obligation between Normco and Marathon, and (2) finds that though § 905(a) of the LHWCA does not bar Marathon's claims for express or implied contractual indemnification from Normco and Travelers, (3) Fifth Circuit jurisprudence does not recognize the WWLP as an implicit contract between LHWCA employers and platform owners on which the latter can recover indemnity from the former, and (4) the OAIA bars Marathon's express contractual claim for indemnity under the master-service contract only to the extent it seeks to recover for its own negligence or fault. In light of recent Fifth Circuit decisions to be discussed below, however, this court also amends its earlier ruling to add that because plaintiffs allege in their complaint that Marathon was negligent and/or at fault in causing the death of plaintiffs' decedent, Marathon may not recover the costs of defending this lawsuit. *See Knapp v. Chevron, USA, Inc.*, 781 F.2d 1123, (5th Cir.1986); *Sullen v. Missouri Pacific R. Co.*, 750 F.2d 428 (5th Cir.1985).

the parties.

DISCUSSION

A. *Marathon's Claim for Indemnity on the Basis of an Alleged Independent Delictual Duty Between Normco and Marathon*

 As stated above, Fifth Circuit jurisprudence recognizes that a non-vessel third party may recover indemnity over against an LHWCA employer on the basis of an independent delictual duty between the employer and the third party; § 905(a) does not bar such claims. *See Pippen v. Shell Oil Co.*, 661 F.2d 378, 387 n. 14 (5th Cir. 1981); *Horton v. Sun Exploration and Production Co.*, 616 F.Supp. 130 (W.D.La. 1985). This court dismissed Marathon's claim for indemnity on summary judgment in the former ruling simply because Marathon did not put forth any evidence of a delictual duty between it and Normco to create an issue of fact whether such a duty exists. Though Marathon's failure to present evidence sufficient to defeat the summary judgment constitutes procedural error, because the substance of Marathon's claim is an area in which Fifth Circuit guidance has been ambivalent, this court is willing to rehear Marathon's claim for indemnity based on Normco's alleged breach of delictual obligation to Marathon.

Marathon alleges two bases on which Normco owes it an obligation in tort. First, it alleges that there is an issue of fact whether Normco was the "manufacturer" or "designer" of the light pole that electrocuted plaintiffs' decedent and is therefore liable to Marathon on a theory of products liability. Second, Marathon alleges that Normco was the lessor of a defective product that it knew was defective, and, consequently, *perhaps* had a duty to correct the defect or warn the lessee of the defect under La.C.C. Art. 2320.

 Though Marathon's first argument should be commended for its creativity, it is simply too farfetched to deserve any level of credence. Marathon alleges that because Normco simply assembled a light pole that was used on Marathon's rig,

Normco is the "manufacturer" of the light pole. Under products liability law, a manufacturer is one who manufactures a product that it sells and hence puts into the stream of commerce. *See Weber v. Fidelity & Casualty Ins. Co. of N.Y.*, 259 La. 599, 250 So.2d 754 (1971). There is no evidence that Normco put this or similar light poles into the stream of commerce. Normco is therefore neither a "manufacturer" within the meaning of products liability law nor liable to Marathon on that basis. *See id.*

■ Moreover, Marathon has cited no authority for the proposition that as a lessor of an allegedly defective product, Normco has a duty to indemnify Marathon from any damages it might have sustained as a result of that "product's" defect. Hence, as Marathon has failed to allege any cognizable legal basis for an independent obligation in tort between it and Normco, this court concludes that Marathon has not raised a genuine issue as to any material fact and that, as a matter of law, Normco's summary judgment should be upheld.

Though *Pippen* found that a delictual duty between a third party and an LHWCA employer could support an indemnity claim by the former against the latter, it did not give any examples of specific relationships that could support such a duty. Because there has been demonstrated a strong need to understand the nature of the relationship giving rise to the sort of delictual obligation upon which indemnity might be had under *Pippen*, this court will offer the little guidance available.

In *Holden v. Placid Oil Co.*, 473 F.Supp. 1097 (E.D.La.1979), Judge Cassibry suggested that a third-party could recover against an LHWCA employer who was a manufacturer *if* Louisiana products liability law provided for such recovery. 473 F.Supp. at 1102. The court denied the

manufacturer's motion for summary judgment to dismiss the third-party indemnity claim against it on the grounds that there remained an issue of fact whether the LHWCA employer, as manufacturer of the defective product giving rise to the main action owed the third-party a delictual duty on which the third-party could base its indemnity claim. It did not reach the question of whether Louisiana law in fact does provide for such recovery.

■ Beyond *Holden*, there exists law only on the basic requirements of the delictual relationship, and examples of what does *not* satisfy those requirements. The fundamental requirement is that the court must find the third-party's indemnity claim is based on a tort duty the employer owes directly to the third-party and not to the employee. *See White v. Texas Eastern Transmission Corp*, 512 F.2d 486 (5th Cir. 1975); *Holden,* 473 F.Supp. at 1100 (citing Larson, *Workmen's Compensation Law* § 76.30 (1974)).

In *White*, the survivors of an LHWCA employee who had been fatally injured by the explosion of a natural gas pipeline "launch package" on which he was working, brought action against, among others, the manufacturer of the package's "actuator valve." The manufacturer filed a third-party complaint against the LHWCA employer seeking tort indemnity or contribution.

Relying on *Ocean Drilling & Exploration Service (ODECO) v. Berry Brothers Oilfield Service, Inc.*, 377 F.2d 511, 512 (5th Cir.1967), *cert. denied*, 389 U.S. 849, 88 S.Ct. 102, 19 L.Ed.2d 118 (1967),[2] the court rejected the manufacturer's tort indemnity claim against the employer. The court reasoned that in order for a third-party to have a right of indemnity against an LHWCA employer, "there must be some underlying tort liability predicated on the

---

**2.** In *ODECO,* the Fifth Circuit rejected the traditional tort theories of "active-passive" and "primary-second" negligence as bases for third-party recovery over against an LHWCA employer. 377 F.2d at 514. These traditional bases for tort

indemnity, like that for contribution among joint tortfeasors, are classic examples of claims based solely on the employer's breach of duty to his employee and not to the third-party.

breach of the employer's duty" to the third party. 512 F.2d at 489. The court found:

the only breach of duty—and the only resulting theoretical liability—of [the employer] that could be asserted was a duty *owed to its employee* to assemble the launch package in a non-neglect manner so as to prevent injury to the employee. It is clear beyond doubt that under ODE-CO that § 905 of L & H has extinguished *this* liability in favor of a compensation statute. Thus, there remains no underlying tort liability to support [the manufacturer's] claim.

Similarly in *Hamilton v. Mesa Petroleum Co.*, 495 F.Supp. 718 (E.D.La.1980), a longshoreman brought action against the owner of a stationary offshore platform for injuries he sustained while working on the platform. The platform owner filed a third-party indemnity claim against the LHWCA employer alleging that the employer breached its duty to the platform owner "by failing to adhere to 'standing and express safety rules.'" 495 F.Supp. at 719.

The court rejected the third-party claim on three basis: First, the court found that a duty to enforce safety rules was a duty the employer owed not to the platform owner but rather to "the class of persons" who were protected by such rules, that is, its employees. *Id.* at 723.

Secondly, the *Hamilton* court found that even if the employer's duty to enforce specific safety instructions were a duty owed to the platform owner, though such a duty may be labeled delictual it is indistinguishable from the implied contractual warranty of workmanlike performance rejected in *ODECO* as a basis for a platform owner's recovery over against an LHWCA employer. *Id.* at 721, 722, 723–24.

Finally, the *Hamilton* court found that even if an independent tort duty existed between the employer and platform owner, under *ODECO* (suggesting that only contractual obligations could support third-par-

ty indemnity actions against an LHWCA employer) a delictual duty simply could not support such claims. *Id.* at 724.

*Pippen*, decided one year after *Hamilton*, effectively overruled the portion of *Hamilton* rejecting *Holden* by recognizing that a delictual duty between an LHWCA employer and a platform owner could, in fact, support an indemnity claim by the latter against the former. 661 F.2d at 387 n. 14. *Pippen*, therefore, similarly affects the second basis for the *Hamilton* decision. Now, if a platform owner's indemnity claim against an LHWCA employer resembles or is even "the functional equivalent" of a claim based on the WWLP, as long as the claim is based on a legitimate delictual duty between the platform owner and the stevedore employer, *Pippen* requires that such a claim be recognized. Again, whether such a claim exists other than in theory is yet to be seen.

### B. *Marathon's Claim for Contractual Indemnity*

#### 1. *Express and Implied*

■ Though § 905(a) does not bar third-party indemnity claims against LHWCA employers when there is a contractual (express or implied) relationship between the employer and the third-party upon which the indemnity claim is based, *Pippen v. Shell Oil Co.*, 661 F.2d 378 (5th Cir.1981); *Ryan Stevedoring Co. v. Pan-Atlantic SS Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956),[3] the Fifth Circuit has refused to recognize an implied warranty of workmanlike performance as a duty a stevedore owes a platform owner upon which a platform owner's indemnity action may be had. *Olsen v. Shell Oil Co.*, 595 F.2d 1099, 1101 (5th Cir.), *cert. denied*, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979); *Law v. Sea Drilling Corp.*, 510 F.2d 242 (5th Cir. 1975); *Ocean Drilling & Exploration Co. (ODECO) v. Berry Brothers Oilfield Services, Inc.*, 377 F.2d 511 (5th Cir.1967). It

---

**3.** Whether indemnity provisions in oilfield contracts are nullified by the OAIA is a separate question—to be addressed below.

is unclear, however, why the Fifth Circuit has denied platform owners this remedy.

A breach of the WWLP as a basis for a *shipowner's* indemnity against stevedore employers was first recognized in *Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). The general view is that the WWLP was never an actual duty a stevedore owed a shipowner, but was, rather, a fiction created by the *Ryan* court to compensate for the shipowner's strict liability to injured longshoremen under the doctrine of unseaworthiness.[4] *See Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1983); *ODECO*, 377 F.2d at 513. If *Ryan*, in fact, merely created a fiction in the WWLP rather than recognizing an actual duty, as *ODECO* and subsequent cases suggest, then there is no reason that the fiction should not now apply to platform owners. Though in the 1972 amendments to the LHWCA Congress overruled *Ryan* and abolished a shipowner's indemnity action against a stevedore on the basis of the WWLP, in doing so it also overruled *Sieracki*, and abolished the shipowner's strict liability to injured longshoremen. Because in overruling *Sieracki*, longshoremen could no longer recover against the shipowner without proving negligence, the rationale behind the *Ryan* "fiction" no longer existed. *See Olsen v. Shell Oil Co.*, 595 F.2d 1099, 1103 n. 3 (5th Cir.), *cert. denied*, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979).

▮ By contrast, since the *ODECO* ruling (refusing to recognize the WWLP in platform cases), platform owners have become subject to Louisiana law. *See Rodrigue v. Aetna Casualty Insurance Co.*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969). Under Louisiana law, in certain situations a platform owner is strictly liable for injuries that occur on its platform. *Olsen*, 365 So.2d 1285, 1292 (La.1979) (citing La.Civ.Code Ann. art. 2322). It would therefore appear that in these situations the platform owner should be entitled to the same right of recovery against the LHWCA employer as was the shipowner formerly under the *Ryan* doctrine. The Fifth Circuit has yet to reach such a decision, however, and this court is constrained by the existing precedent.

### 2. *The Effect of Lockheed*

Marathon urges further that its indemnity claim under the WWLP should be allowed pursuant to the United States Supreme Court decision of *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1983). In *Lockheed*, a United States employee was killed in the crash of a United States owned and operated aircraft. The administrator of the estate brought action against Lockheed Aircraft Corporation, the manufacturer of the aircraft. Lockheed, in turn brought a third-party action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–80, seeking traditional tort indemnity on the allegation that it was at most passively negligent, while the government's active negligence caused the injury. *Lockheed* alleged no independent duty between Lockheed and the U.S. on which the indemnity claim was based.

Relying heavily on *Weyerhaeuser S.S. Co. v. United States*, 372 U.S. 597, 83 S.Ct. 926, 10 L.Ed.2d 1 (1963), which "had considered FECA's exclusive liability provision and carefully reviewed its legislative history," *Lockheed*, 103 S.Ct. at 1036, the Supreme Court held that the exclusive liability provision of the Federal Employees' Compensation Act ("FECA"), 5 U.S. § 8116(c), did not bar Lockheed's third-party claim for tort indemnity. 103 S.Ct. at 1038. The Court reasoned:

> "[t]here is no evidence whatever that Congress was concerned with the rights of unrelated third parties, much less of any purpose to disturb settled doctrines of [tort] law affecting the mutual rights and liabilities of private [parties] in [indemnity] cases." [*Weyerhaeuser*, 372

---

**4.** Pursuant to *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

U.S. at 601, 83 S.Ct. at 929]. Section 8116(c) was intended to govern only the rights of employees, their relatives, and people claiming through or on behalf of them (footnote omitted). These are the only categories of parties who benefit from the "*quid pro quo*" compromise that FECA adopts, ... [that is] the right to receive immediate, fixed benefits, regardless of fault and without need for litigation [in exchange for the right to sue the government].

*Id.* at 1037.

The *Lockheed* Court observed that FECA's exclusive liability provision was modeled on § 905(a) of the LHWCA. *Id.* at n. 4. The question is thus raised whether *Lockheed* compels the conclusion that the LHWCA's exclusive liability provision, like FECA's, allows all third-party claims against LHWCA employers that are brought by parties who are not within the category of persons who benefit from LHWCA's *quid pro quo* compensation scheme, regardless of whether the third party is owed some independent duty by the employer upon which the third-party claim is based.

In *Horton v. Sun Exploration & Production Co.*, 616 F.Supp. 130 (W.D.La. 1985), this court answered the question in the negative. At 132. Though the *Horton* court cited *Lockheed's quid pro quo* language, it took away with its left hand what it had apparently given the third-party indemnitee with its right. The court adopted *Lockheed's quid pro quo* language to support the proposition that § 905(a) does not bar *all* third-party claims against LHWCA employers, but it limited its holding to a finding that these third parties may recover over from the LHWCA employer *only* where there exists an independent duty between the employer and the third party. At 132.

The *Horton* court cited *Lockheed's quid pro quo* language "to support" the *Pippen* rule. Therefore, the court accepted the proposition that in enacting the LHWCA, as in enacting FECA, Congress was unconcerned with the mutual rights and liabilities

of unrelated third parties, with the implicit limitation in that proposition that the mutual rights and liabilities to which it referred were only those that are independent of the rights and liabilities between an LHWCA employer and his employee. The court's holding indicates that it does not believe Congress was unconcerned with a third party's alleged right to claim tort indemnity or contribution on the basis of the employer's breach of duty to its employee.

Contrary to the *Lockheed* majority, this court believes such an implicit limitation on the *quid pro quo* language also existed in *Weyerhaeuser*, the case upon which the *Lockheed* court rested its decision. In *Weyerhaeuser*, a United States ship and a Weyerhaeuser vessel collided at sea; both vessels were found to have been at fault. A federal employee injured in the collision recovered FECA benefits and payments from a settled negligence action against Weyerhaeuser. Weyerhaeuser, in turn, sued the government under admiralty's moiety rule, including a claim for one-half of the settlement it had paid to the federal employee.

The United States argued that Weyerhaeuser's claim for one-half of the settlement amount violated FECA's exclusive liability provision by making the government indirectly liable for its employee's tort recovery. The Supreme Court rejected the United States argument, however, and after the above-quoted discussion of FECA's *quid pro quo* compensation scheme, held as follows:

In *Ryan v. Pan-Atlantic Corporation*, 350 U.S. 124, [76 S.Ct. 232, 100 L.Ed. 133 (1956)], it was held that despite this exclusive-liability provision, a shipowner was entitled to reimbursement from a longshoreman's employer for damages recovered against the shipowner by the longshoreman injured by the employer's negligence. The court's decision in *Ryan* was based upon the existence of a contractual relationship between the shipowner and the employer. In a series of subsequent cases, the same result was reached, although the

contractual relationship was considerably more attenuated. *Weyerhaeuser Steamship Company v. Nacirema Company,* 355 U.S. 563 [78 S.Ct. 438, 2 L.Ed.2d 491 (1958)]; *Crumady v. The J.H. Fisser,* 358 U.S. 423 [79 S.Ct. 445, 3 L.Ed.2d 413 (1959)]; *Waterman Company v. Dugan & McNamara,* 364 U.S. 421 [81 S.Ct. 200, 5 L.Ed.2d 169 (1960)].

In the present case there was no contractual relationship between the United States and the petitioner, governing their correlative rights and duties. There is involved here, instead, a rule of admiralty law which, for more than 100 years, has governed with at least equal clarity the correlative rights and duties of two shipowners whose vessels have been involved in a collision in which both were at fault. *The Schooner Catharine v. Dickinson,* 17 How. 170, 177 [15 L.Ed. 233 (1854)]; *The North Star,* [16 Otto 17] 106 U.S. 17, 21 [1 S.Ct. 41, 44, 27 L.Ed. 91 (1882)]. *See Halcyon Lines v. Haenn Ship Corporation,* 342 U.S. 282, 284 [72 S.Ct. 277, 279, 96 L.Ed. 318 (1952)]. Long ago this court held that the full scope of the divided damages rule must prevail over a statutory provision which, like the one involved in the present case, limited the liability of one of the shipowners with respect to an element of damages incurred by the other in a mutual fault collision. *The Chattahoochee,* 173 U.S. 540 [19 S.Ct. 491, 43 L.Ed. 801 (1899)]. The statute at issue was the Harter Act, which categorically provides that cargo cannot collect directly from the carrying vessel for damages as a result of faults in navigation. The Court held that despite this statutory provision, the carrying vessel must share, according to the divided damage rule, damages sustained by the non-carrying vessel resulting from liability to the carrying vessel's cargo

.    .    .    .    .

In this case, as in *The Chattahoochee,* we hold that the scope of the divided damages rule in mutual fault collisions is unaffected by a statute enacted to limit the liability of one of the shipowners to unrelated third parties.

Therefore, though the *Weyerhaeuser* Court included the *quid pro quo* language in its opinion, the Court's holding did not rest on the *quid pro quo* proposition. If the Court had concluded that Congress was unconcerned with the rights of *all* third parties who did not benefit from FECA's *quid pro quo* compromise, regardless of the basis on which they sought indemnity (or contribution), then it could have ended its discussion there and allowed Weyerhaeuser's contribution claim against the government. Yet, it did not. The Court stressed that though there was no contractual relationship between the United States and Weyerhaeuser on which the latter could base its claim for contribution, there was the ancient moiety or divided damages rule of admiralty law that took precedence over FECA's exclusive liability provision.

Professor Larson has explained the significance of the *Weyerhaeuser* Court's reliance on the divided damages rule in justifying its decision under FECA and LHWCA jurisprudence:

> The moiety rule is in effect taken out of the company of the contribution cases and assimilated to the *Ryan* type of independent-indemnity-duty cases. The key factor here is that *the moiety obligation, unlike contribution between tortfeasors, generally, is indeed a separate duty based, not on the two wrongdoer's mutual relation to the plaintiff, but on their relationship to each other.*

Larson, *Workmen's Compensation Law* § 76.31 (1974) (emphasis added). Professor Larson cites *United Air Lines, Inc. v. Wiener,* 335 F.2d 379 (9th Cir.), *cert. denied,* 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964), in which the Ninth Circuit distinguished the difference in the respective duties underlying the divided damages rule and traditional tort indemnity:

> The admiralty rule of divided damages is to be distinguished from the rule of [tort] indemnity, ... since under admiralty law there arises from a collision involving mutual fault the right to appor-

tionment of all damages resulting therefrom, including personal injuries, cargo damage, and damage to ships. The divided damages rule is based upon the duty which each shipowner owes the other to navigate safely *irrespective of any duty to the person injured.* On the other hand neither contribution nor indemnity may be awarded without the support of liability on the part of the indemnitor to the person injured.

335 F.2d at 403 (emphasis Larson's).

This court therefore believes that in *Horton* it did essentially what the Supreme Court had done in *Weyerhaeuser.* It asserted a broad proposition that was implicitly limited by its actual holding. Nonetheless, it is not clear that *Lockheed* can be read ·to include such a limitation on the *quid pro quo* proposition. The *Lockheed* majority found that the situation in *Weyerhaeuser* was "nearly identical" to that in *Lockheed. Id.* 103 S.Ct. at 1037:

Here Lockheed relies on substantive indemnity law [noting that "[t]he validity of *Lockheed's* underlying substantive claim is not before us"], while the private shipowner in *Weyerhaeuser* relied on the admiralty divided damages rule.... To the extent that the basis for the underlying cause of action could make any difference, the indemnity theories on which *Lockheed* relies [traditional tort theories of "active-passive" or "primary-secondary" negligence] are as well-established as the divided damages rule was in *Weyerhaeuser.*

*Id.* at 1039.

█ Though this court is more persuaded by Professor Larson's view that the moiety or divided damages rule is distinguishable from theories of tort contribution and indemnity, the Supreme Court's view obviously is now controlling in the determination of any third-party claims brought against FECA employers. The Court's view is not necessarily controlling, however, in the LHWCA case at hand.

The *Lockheed* court rested its opinion almost exclusively on *Weyerhaeuser.* It did not discuss the LHWCA precedent holding that § 905(a) bars third-party contribution, *see, e.g., Cooper Stevedoring Co. v. Fritz Kopke, Inc.,* 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974); *Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979), and indemnity claims based on an employer's breach of duty to its employee, rather than to the third party. *See, e.g., Pippen v. Shell Oil,* 661 F.2d 378 (5th Cir.1981). The fact that the Supreme Court concluded FECA's exclusive liability provision does not in and of itself preclude traditional tort indemnity claims based on the employer's breach of duty to its employee, does not compel the conclusion that the Court intended to overrule traditional jurisprudence reaching a contrary interpretation of § 905(a). *Drake v. Raymark Industries, Inc.,* 772 F.2d 1007, 1020 (1st Cir.1985); *Johnston v. Arco,* 620 F.Supp. 974 (E.D.La.1985).

Though the *Drake* court's conclusion is the same as that reached by this court, its rationale is somewhat different. *Drake* ·emphasized the following "careful[ ] and precise[ ]" wording of *Lockheed's* holding:

The District Court held that *Lockheed* had a right to indemnity under the governing substantive law, but the Court of Appeals did not rule on that question. Accordingly, we do not consider it. We adhere to the decision in *Weyerhaeuser* and hold only that FECA's exclusive liability provision, 5 U.S.C. § 8116(c), does not directly bar a third-party indemnity action against the United States.

460 U.S. at 199, 103 S.Ct. at 1039, *as cited in Drake,* 772 F.2d at 1020.

The *Drake* court noted that the *Lockheed* majority

stressed twice in the course of its opinion . that the underlying substantive law granting *Lockheed* a right to indemnification was uncontroverted, 460 U.S. at 192, 199 n. 8, [103 S.Ct. at 1038 n. 8] and the only question for decision was whether § 8116(c) of FECA interposed a bar to a third-party action against the United States.

772 F.2d at 1020. The *Drake* court therefore concluded:

> *Lockheed* requires that we determine whether there is a basis in substantive law for defendants' third-party action against [the LHWCA employer]; it does not overrule three decades of consistent Supreme Court jurisprudence regarding the interpretation of § 905(a).

*Id.*

After reviewing the "three decades of" § 905(a) jurisprudence consistently rejecting third-party contribution and tort indemnity claims against LHWCA employers,[5] the court found that such third parties, unlike the third party in *Lockheed,* do not have a substantive right of tort indemnity or contribution against the LHWCA employer. *Drake,* 772 F.2d at 1022.

Though accepting its conclusion, this court finds the *Drake* court's reasoning circuitous. The *Drake* court apparently adopted *Lockheed's* finding that FECA's, and hence LHWCA's, exclusive liability provision does not *directly* bar a third-party indemnity action. Yet, it found that *Lockheed* rests the question of whether a third party can actually recover indemnity on the validity of the claim's underlying substantive basis. The court then found that traditional theories of tort indemnity and contribution are not valid substantive bases for indemnity. Nonetheless, it depended on jurisprudence consistently finding that § 905(a) does bar such claims to support its conclusion that theories of "active-passive" and "primary-secondary" negligence are themselves invalid. The court therefore reasons that (1) § 905(a) does not directly bar unrelated third-party claims against LHWCA employers, but (2) there must be a valid underlying substantive basis for the third-party claim, yet (3) because jurisprudence interpreting § 905(a) has consistently held that § 905(a) *does in fact bar* traditional tort indemnity and contribution claims based on the employer's concurrent fault in bringing about the employee's injury, these traditional tort principles are not valid bases for third-party recovery. None-

theless, though this court questions the *Drake* court's reasoning, it accepts the court's conclusion that *Lockheed* did not overrule § 905(a) jurisprudence consistently rejecting traditional tort indemnity and contribution claims against LHWCA employers.

■ Moreover, even if *Lockheed* had overruled the traditional requirement of an independent duty between an LHWCA employer and a platform owner in order for the latter to receive indemnity from the former, Marathon still would not be provided an indemnity claim under the WWLP. Marathon's WWLP claim fails not because an implied contractual relationship cannot support an indemnity claim under the LHWCA, but rather because a stevedore employer does not owe an implied duty of workmanlike performance to third-party platform owners on which an indemnity claim can be based. *See ODECO,* 377 F.2d at 513. *Lockheed* does not create that duty.

### C. *The Louisiana Anti-Indemnity Act*

■ In its former ruling, this court held that the Louisiana Oilfield Anti-Indemnity Act, 9 La.Rev.Stat.Ann. 2780 (West Supp. 1986), nullifies indemnity provisions in oilfield contracts "only to the extent that they purport to require indemnification or defense for the indemnitee's negligence [or fault]." *Carney v. Marathon Oil Co.,* 615 F.Supp. 48, 50 (W.D.La.1985) (citing *Home Ins. Co. v. Garber Industries,* 588 F.Supp. 1218 (W.D.La.1984)). Conversely, the OAIA does not nullify such provisions to the extent they purport to indemnify the indemnitee against claims that do not arise out of the indemnitee's own negligence or fault. As Judge Shaw explained in *Garber,* "[a]s a practical matter, this means only that [the indemnitor] will be entitled to its costs of defense [from the indemnitee]," after a factual finding that the indemnitee was not negligent or otherwise at fault. 588 F.Supp. at 1233.

■ Normco and Travelers move this court to reconsider its former ruling

---

**5.** *See* cases cited *supra* p. 1046.

and hold that the OAIA makes the provisions of Marathon-Normco's master-service contract, on which Marathon bases its indemnity claim, null and unenforceable *in their entirety*. This court rejects such an interpretation of the statute. The statute's language "to the extent" indicates the limit to which the OAIA's contract nullification applies. That limit is the indemnitee's negligence or fault. The Act does not nullify indemnity provisions in oilfield contracts beyond those purportedly providing indemnity for the indemnitee's negligence or fault. This point, however, has been made moot by recent developments in Fifth Circuit jurisprudence.

In *Sullen v. Missouri Pacific Railroad Co.*, 750 F.2d 428, 433 (5th Cir.1985), the Fifth Circuit held that under Louisiana law,

> Whether a party is obliged to tender a defense to another party depends entirely upon the allegations in the precipitating pleadings ... In determining whether an indemnitor ... is obligated to defend an indemnitee ... under the terms of the indemnitor's ... contract, [t]he Louisiana courts look exclusively to the pleadings in light of the contract provisions; the ultimate outcome of the case has no effect upon the duty to defend.

*Accord Laird v. Shell Oil Co.*, 770 F.2d 508 (5th Cir.1985). In *Knapp v. Chevron USA, Inc.*, 781 F.2d 1123, (5th Cir.1986), the court held that this rule applies in the context of an oilfield agreement governed by the OAIA. At 1125. *Knapp's* finding overrules the *Garber* rule that whether an indemnitee can recover its costs of defense is decided only after its negligence or fault had been determined by the appropriate factfinder.

According to *Sullen* and *Knapp*, whether an indemnitor under an oilfield service contract owes an indemnitee the latter's costs of defense must be determined by examining the allegations contained in the pleadings. *Knapp*, slip op. at 1128; *Sullen*, 750 F.2d at 433. Where pleadings allege that the defendant, who is seeking indemnity from a third-party, is negligent or at fault, as the pleadings inevitably will, the defendant/indemnitee may not recover the costs of its defense from the indemnitor. Why? Because the OAIA voids the indemnitor's obligation to defend the indemnitee against the latter's own negligence or fault, and *Sullen* and *Knapp* require such negligence or fault to be determined by an examination of the pleadings, rather than at the conclusion of the case.[6] Therefore, where the precipitating pleadings allege facts which, if proven, would establish the indemnitee's negligence and/or fault, the OAIA nullifies the indemnity agreement regardless of the ultimate finding as to the indemnitor's negligence or fault. *McCall v. Columbia Gas Development Corp., et al.*, 635 F.Supp. 49, 53–54 (W.D.La.1986).

Though this court is convinced that in enacting the OAIA, the legislature intended to prohibit an indemnitee under an oil or gas contract to recover from the indemnitor *only* where the indemnitee has been solely or concurrently negligent or at fault, and clearly *chose* to leave available to the indemnitee the ability to recover the costs of defending an action to which it is found not negligent or at fault, it is indisputable that the *Sullen/Knapp* rule bars the latter action by the indemnitee as well.

**6.** In *Jackson v. Tenneco Oil Co.*, 623 F.Supp. 1452, 1455–56 (E.D.La.1986), and *Wilson v. J. Ray McDermott & Co., Inc.*, 616 F.Supp. 1301, 1303 n. 2 (E.D.La.1985), Judge Mentz found that *Sullen* allows a defendant to recover its costs of defense under an oilfield master-service contract if that contract specifically provides for such costs and the defendant is shown to be neither negligent nor at fault. This court, however, believes this is an improper interpretation of *Sullen*. Though *Sullen* holds that the costs of defense must be listed as a specific item of indemnity in a contractual indemnity provision in order to be recoverable by an indemnitee,

*Sullen*, 750 F.2d at 433–34, it also holds that the determination of whether an indemnitor owes an indemnitee a defense must be determined by the allegations of the pleadings. *Id.* at 433. Therefore, regardless of whether an indemnity provision provides for costs of defense as an item of indemnification, if the pleadings allege that the indemnitee is negligent or at fault, the indemnitor has no duty to indemnify. *See McCall v. Columbia Gas Development Corp.*, 635 F.Supp. 49, 54 n. 6 (W.D.La.1986); *Alexander v. Chevron, U.S.A., Inc.*, 623 F.Supp. 1462, 1466 n. 7 (W.D.La.1985).

In the instant case, the plaintiffs' complaint alleges that Marathon was negligent or otherwise at fault in causing their decedent's death. Therefore, under *Knapp*, Marathon is prohibited from recovering its costs of defense from Normco. This court must therefore modify its July 26, 1985 ruling in which it rejected Normco's motion for summary judgment on the basis that Marathon's negligence or fault was an issue of fact that must be determined before Marathon's right to recover its costs of defense from Normco and Travelers could be decided.

Accordingly, as Marathon has provided no other basis on which it is entitled to recover over against Normco and Travelers, the latter's motion for summary judgment dismissing Marathon's indemnity action should be granted.

### ORDER

For the reasons assigned in the Memorandum Ruling of this date,

IT IS ORDERED that upon reconsideration of its July 26, 1985 ruling, this court modifies its earlier ruling and GRANTS Normco and Travelers' motion for summary judgment dismissing Marathon's indemnity action against them.